In the Matter of the Estate of CHARLES ROSENBERG, Deceased.

Surrogate's Court, Richmond County, May 8, 1933.

*LHowe & Obstfeld*, in person.

*Henry A. Blumenthal*, for the executor and trustee.

*Albert C. Fach*, for the executor and trustee.

*Edward M. Seguine*, special guardian.

SMITH, S. Applicants claim compensation from the estate of Charles Rosenberg, deceased, for services rendered to four of the ten distributees named in the will of the decedent, on the assumption that such services were of value to the estate.

It appears from the petition, the records in the surrogate's office and the testimony of Harry R. LHowe, one of the applicants, that a proceeding was begun in June, 1920, to compel the executors and trustees to account; that an order was thereafter entered consolidating such proceeding with a proceeding for a voluntary accounting, and that a decree was entered therein on February 3, 1922, which adjudged that a partnership had existed between the decedent and his son, Morton Rosenberg, fixed the amount due under said partnership to said son, directed the distribution of illegally accumulated income, and fixed the amount of compensation due the attorneys for the representatives.

That an appeal was taken from said decree by the distributees thereafter represented by said applicants, by other attorneys, and that in December, 1923, the Appellate Division made an order upon the issue of partnership (208 App. Div. 707).

That on April 25, 1925, said Appellate Division made an order adjudging no partnership and referred matter to referee to find value of services of attorneys and counsel for executors (213 App. Div. 167).

And not until then did the applicants appear in the picture, having been retained at that time by four of the distributees, and thereafter actively engaged in the litigation and through their services procured certain adjudications of benefit to the estate (218 App. Div. 845; 225 id. 760).

But an appeal was taken from the determination of the Appellate Division by Morton Rosenberg and the executors and trustees and also by applicants in behalf of their clients, and what had been accomplished through applicants' efforts faded away as the Court of Appeals (as appears by 251 N. Y. 115) found that Morton Rosenberg was a partner and that he was to be credited with one-half of the profits of the business since the death of the decedent. And the compensation of the attorneys and counsel for the executors

and trustees, which had been reduced by the Appellate Division, was afterwards agreed to at the original amounts allowed, pursuant to the direction of the Appellate Division (213 App. Div. 167), viz.: That if such compensation could not be agreed to, then a proceeding must be brought for that purpose.

Applicants during the pendency of said litigation and thereafter brought a number of proceedings to compel the distribution of the unlawfully accumulated income and conducted appeals from some of the surrogate's determinations, which resulted in the distribution at various times of over $315,000 to their clients and the other distributees, but it nowhere appears that said representatives had been charged with fraud or other misconduct, or in fact had withheld payment for any improper purpose, but that the main reasons for non-distribution were that the funds were in mortgage or other investments which could not immediately be converted into money, and that payments should not be made during the pendency of the litigation.

In order to avoid the large expense that the estate might be required to pay to litigate the question of the extent and value of the services rendered by applicants, no testimony was taken in relation thereto, for such testimony would be needless, unless it was first determined that the services performed by applicants were services which resulted in advantage to the estate.

Until the enactment of chapter 526 of the Laws of 1923 (Section 231-a of the Surrogate's Court Act), which provided that the surrogate should have power " to fix and determine the compensation of an attorney *for services rendered to an estate* or to its representative or to a devisee, legatee, distributee or any person interested therein; * * * may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein," the surrogate had no authority to fix and determine the compensation of an attorney or make an allowance for counsel fees from the principal of an estate other than to the attorney for the representative, no matter how meritorious the services may have been to the estate, and this statement is made after full consideration of section 40 (enacted 1921) of the Surrogate's Court Act. A surrogate, however, had the power *to award costs, in his discretion,* to any attorney in a proceeding pursuant to and in compliance with sections 275 to 279 of the Surrogate's Court Act, and in a proceeding brought for that purpose, *upon proper notice to all interested,* could decide under section 222 of said act, formerly section 2692 of the Code of Civil Procedure, " what reasonable counsel fee necessarily incurred in the administration of the estate "

the representative could pay his attorney, for it had been held in *Matter of Rabell* ([1916] 175 App. Div. 345) that " If the representative has funds to pay, and, even for meritorious reasons, will not pay the whole demand and proposes to avoid a settlement out of court, there are ample facts to enable the surrogate to determine to what extent the estate shall be amenable for the debt and to direct payment. This does not decide that the respondent is entitled to an accounting, but rather that at his instance the court shall decide what sum the representatives shall pay.'"

And this holding was evidently based upon the holding in *Matter of Smith* ([1906] 111 App. Div. 23), which, although a decision in respect to an attorney's lien in Surrogate's Court proceedings, stated that: " Primarily an executor personally and not the estate is liable for all contracts made by him in the execution of his trust. Notwithstanding this rule, the necessary expenses of administering an estate may be regarded as a charge upon, although not a debt against the estate, and when the expenses incurred by an executor are by the court found to be necessary and proper in the administration of the estate, they are payable from the estate." And the surrogate also had authority under the 1923 amendment to section 278 of said act to make *an allowance* to a representative or any party to a proceeding to construe a will.

However, the effect of section 231-a, in addition to making statutory the power already possessed, was to give a surrogate the authority to direct compensation to be paid out of an estate to the attorney for a distributee, who:

1. Rendered services to an estate which were of such a nature as should have been performed by the attorney for the representative to enable the representative to settle the estate and distribute the proceeds.

2. Rendered services to a distributee which tended to bring into existence, produce or tended to produce assets that would enhance the value of the estate or would procure the restoration or delivery of property belonging to an estate; and

3. Rendered service to a distributee, where the representative in the settlement of an estate endeavored to deprive the distributee of his right in the assets, or to prevent his receiving his share of the assets personally on the distribution, although in such instance costs and not compensation or counsel fees might be the measure of payment therefor;

As to 1: Such services could only be performed if the representative neglected to have his attorney perform the ordinary services necessary to enable the estate to be settled, for instance to conduct an estate tax proceeding, if the distributee had the facts in relation

to the assets and claims. Such services, however, would be limited, for in most instances the representative only would have the right to act, and his negligence would only be a reason for his removal or surcharge upon his accounting.

As to 2: Such services can only be performed on an accounting where it was found that the representative had neglected to collect assets, or had improperly distributed assets with the value of which he could be charged and the assets or the value thereof restored to the estate, or had mistakenly or unlawfully converted assets to his own use, and which he was compelled to restore.

And, as to 3: Such services could be performed, for instance, where the representative of the estate to procure a decree properly distributing the estate alleges in good faith upon reasonable information that the distributee was illegitimate, or not properly adopted or was incompetent, and the distributee in an endeavor to traverse the allegations would be put to considerable expense.

But before compensation can be decreed to be paid out of estate funds in any instance, the surrogate must be satisfied "that the services be [have been] shown to have resulted in such an advantage to the estate that it would be unfair for the party to pay for them." (*Matter of Vorndran*, 132 Misc. 611.)

And the attorney for the distributee must be successful in his endeavors, for he cannot have counsel fees for unsuccessful though apparently necessary services, as would the attorney for the representative.

Applying the try-square of what is necessary to be done before compensation can be decreed to be payable from an estate for services performed by attorneys for distributees to the services performed by applicants, it does not appear that the services performed by them were services rendered to the estate, or were services rendered to a distributee that were of value or advantage to the estate, or services rendered to a distributee that prevented the loss of his interest in the estate.

Undoubtedly, had applicants succeeded in the litigation the estate would have increased in value and applicant would have been entitled to compensation therefor, but the records fail to show that they performed any service that resulted in any advantage to the estate either in the litigation or in their efforts to compel the distribution of the unlawfully accumulated income directed to be paid by the decree of the Surrogate's Court. Such distribution could have been compelled by an order and the costs assessed against the representatives personally, for it was held in *Matter of Curry* (19 N. Y. Supp. 728) that if an executor or administrator refuses to comply with an order or decree directing him to do a

particular thing or pay a particular sum and a motion to compel him to comply with the order or decree is necessitated, the costs of such a motion will be personally imposed upon the executor, and any successful appeal from a refusal of the surrogate to make an order could have been compensated for in like manner by costs charged personally against the representatives.

I accordingly find that none of the services performed by applicants resulted in any advantage to the estate and as Surrogates' Courts are not almoners of deceased persons (*Devin* v. *Patchin*, 26 N. Y. 441), the proceeding is dismissed, with costs.

As it was not necessary to go into the question of extent and value of the services performed by applicants, the merits of the defense of payment of the sum of $20,000 to applicants by their clients being full payment for services for which compensation is claimed from the estate; and that such payment is a bar to the proceeding of the defense of Statute of Limitations; and of laches, raised by the answer of the representatives, were not considered in dismissing the proceeding.

Enter decree in accord herewith; allowance to special guardian to be made therein.