**THOMAS et al. v. CENTRAL HANOVER BANK & TRUST CO. et al.***

No. 6011.

United States Court of Appeals for the District of Columbia.

Argued Jan. 16, 1934.

Decided Sept. 24, 1934.

Rehearing Denied Nov. 19, 1934.

GRONER and HITZ, Associate Justices, dissenting.

W. Bissell Thomas, Wm. B. O'Connell, Joseph Low, and Leslie C. Garnett, all of Washington, D. C., for appellants.

Geo. E. Hamilton, John J. Hamilton, Geo. E. Hamilton, Jr., Henry R. Gower, and Paul E. Lesh, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree in a mortgage foreclosure case.

This case was begun in the lower court by the Central Hanover Bank & Trust Company, a corporation, and Frank Wolfe, trustees, as plaintiffs, against the Wardman Real Estate Properties, Inc., as defendant. The plaintiffs in their bill of complaint allege that on September 27, 1928, the defendant corporation issued certain mortgage bonds in the aggregate sum of $11,000,000, payable as follows: $4,000,000 in 1931, $3,000,000 in 1938, and $4,000,000 in 1948, together with interest at 6½ per cent. per annum, payable semiannually. In order to secure the payment of the bonds according to their tenor and effect, the defendant corporation at the same time executed and delivered to the Central Union Trust Company of New York (now the Central Han-

*Writ of certiorari denied 55 S. Ct. 636, 79 L. Ed. ——.

over Bank & Trust Company, plaintiff herein) and Frank Wolfe, as trustees, a certain indenture of mortgage and deed of trust upon the following described properties situate in the city of Washington, D. C., to wit: Parcel 1, the Wardman Park Hotel and addition thereto; parcel 2, the Carlton Hotel; parcel 3, Chastleton Apartments; parcel 4, Cathedral Mansions, north; parcel 5, Cathedral Mansions, center; parcel 6, Connecticut Avenue and Davenport Apartments; parcel 7, Boulevard Apartments; parcel 8, Stoneleigh Court; parcel 9, Department of Justice Building; parcel 10, 2700 Connecticut Avenue Apartments. By supplemental mortgage the defendant likewise conveyed and mortgaged to the same trustees, subject to the same trusts, the following described property, to wit, the stock in trade of the drug store maintained and operated in Wardman Park Hotel, and the automobile and garage supplies located in the garage upon the premises of the Wardman Park Hotel. The latter items are hereinafter referred to as parcels 11 and 12 in the record. That all of the bonds aforesaid were duly authenticated by the defendant and the trust company, and were issued by defendant for a valid consideration in accordance with the provisions of the mortgage. That $10,963,000 of the bonds are now outstanding in the hands of divers persons, firms, or corporations, who are the owners and holders thereof for value, all of which bonds have been and now are the lawfully created, valid, and enforceable obligations of the defendant corporation, and are entitled to the security of the aforesaid mortgages. That article XII of the mortgage provides, among other things, that in case of default being made in the payment of the principal or interest of any of the bonds when due, and if such default shall continue for a period of 30 days after written notice thereof from plaintiffs or from the holders of 25 per cent. of the amount of the bonds then outstanding shall have been delivered to the company, or by a decree of a court of competent jurisdiction, then and in such case the corporate trustee may, and upon the request in writing of the holders of 25 per cent. in amount of the bonds outstanding shall, by written notice to the company, declare the principal of all the bonds, together with all accrued and unpaid interest thereon, due and payable, and the same shall thereupon become immediately due and payable. That in case of such default the trustees may, upon being requested in writing by the holders of at least 25 per cent. in amount of the bonds then outstanding, proceed by suit at law or in equity to enforce the payment of the bonds and the interest thereon, and to foreclose the mortgage and sell the mortgaged property upon the judgment or decree of any court of competent jurisdiction. That in case the trustees shall proceed by suit in equity after default as above provided they shall be entitled to have the mortgaged property sold by judicial sale under the order or decree of a court of competent jurisdiction for the satisfaction of the principal and interest due upon the outstanding bonds secured by the mortgage. That the company waived and relinquished the benefit of any and all valuation, stay, appraisement, or extension laws existing in the District of Columbia or the United States, and stipulated that at any sale of the mortgaged property the same may be sold in one parcel as an entirety, or in such parts as the corporate trustee shall determine, or as the holders of at least a majority in principal amount of the bonds then outstanding shall request by written instrument executed by such holders. That on March 1, 1931, a semiannual installment of interest became due and demand was duly made upon the defendant for its payment, but payment was refused and has never since been made. That the amount of interest in default is in the sum of $356,297.50, and default has continued for a period of more than 30 days. That on July 11, 1931, the corporate trustee declared the principal of the bonds, together with all accrued and unpaid interest thereon, immediately due and payable, and demand of payment was duly made as required by the terms of the mortgage, but no part thereof has been paid, and the default still continues. The principal of the bonds in respect of which default was made by defendant company as aforesaid is in the amount of $10,963,000. That the income and revenues of the defendant's properties are and will be insufficient to pay its indebtedness now due, and that the company has no resources with which to provide for the payment of such indebtedness. That the property of the company, unless conserved and maintained, is and will be inadequate to satisfy the bonds now outstanding, and the property will deteriorate, consisting as it does of improved real estate, furniture, and furnishings, and other property thereto appurtenant. That no proceedings have been had at law for the collection or enforcement of the mortgage debt, save only

this suit, and the plaintiffs have no adequate relief at law, and the relief to which they are entitled can only be granted by a court of equity. Wherefore the plaintiffs as trustees pray that the rights of all the parties in interest may be ascertained and fully protected and that the mortgages be foreclosed by order of the court, and the premises be sold, the proceeds applied as in the indentures provided; that a receiver pendente lite may be appointed of the mortgaged properties, with power to take possession of, conserve, manage, operate, and control said properties, and to continue the operation of the business carried on in the premises subject to the order of the court.

On the same day the defendant Wardman Real Estate Properties, Inc., filed its answer in the suit admitting the averments of the bill to be true and consenting to the appointment of a receiver as therein prayed.

Afterwards on July 24, 1931, an amendment to the bill of complaint was filed setting out that the Riggs National Bank of Washington had or claimed a lien upon some of the property named in the mortgage and that the bank should be made a party, served with process, and required to answer the exigencies of the original bill of complaint. The bank, however, filed no pleading in the case.

On July 29, 1931, the appellant Alfred C. Torgeson, by leave of court, filed an intervening petition in the case in behalf of himself and other parties similarly interested. The petitioner alleged that he was the owner of $24,000 par value of the bonds set out in the plaintiffs' bill; that the defendant corporation had been organized and the mortgage bonds in question had been sold to the public by Halsey, Stuart & Co., Inc., and Hambleton & Co., Inc., bankers of the city of New York, when they well knew that the properties upon which the bonds were secured were wholly insufficient to secure the payment of the mortgage indebtedness. The petitioner recited in detail the alleged fraudulent methods pursued by Halsey, Stuart & Co., Inc., and Hambleton & Co., Inc., in the transaction, and prayed that they be made parties in the case and judgment be rendered against them for the losses of the bondholders; that an order theretofore made by the court appointing Thomas D. Carson, Julius I. Peyser, and Joseph P. Tumulty as receivers pendente lite be rescinded, and another receiver be appointed wholly independent of and disconnected with the bankers aforesaid; and

that the trustees as plaintiffs be enjoined and restrained "from foreclosing under said indenture and deed of trust on said properties until the independent bondholders, freed from the domination of the bankers and the alleged bondholders' committee formed at the instance and for the protection of the said bankers, shall have had time to formulate and submit a feasible plan of reorganization in the interest of said bondholders."

On August 3, 1931, the appellees, Leonard L. Stanley, William Buchsbaum, Paul W. Fisher, William W. Greve, Frederick J. Leary, and Andrew J. Miller, appeared as a bondholders' protective committee, and by leave of court filed an intervening petition wherein they alleged that they composed the bondholders' committee representing holders of the mortgage bonds aforesaid; that they are all of the members of that committee; that there had been deposited with them as such committee bonds of these issues amounting to $8,104,000 principal value, representing approximately 74 per cent. of all of the bonds issued and outstanding; that these bonds have been deposited with them pursuant to the terms and conditions of a bondholders' protective agreement; that they now represent the same and are the owners and holders thereof in trust as such committee. They alleged that the averments of the bill of complaint filed by the plaintiffs are true in substance and effect, and they asked that the prayer of the bill be granted.

On October 5, 1931, Harold H. Shaller, one of the appellants, being the holder of a first mortgage bond secured by the mortgage, was granted leave to file an intervening petition setting out his objections to the granting of the decree of foreclosure prayed for by the plaintiffs in the case. The record, however, does not disclose that the intervener filed any pleading in the case prior to the hearing and decree of foreclosure.

The record discloses that upon these issues a trial was had by the court, and on October 14, 1931, at which time the bondholders' protective committee represented about 84 per cent. of the outstanding bonds, the court entered a finding of fact sustaining the allegations of the bill of complaint. The court held that the mortgage set out in the bill was in default, and that the petitioners were entitled in the due performance of their duties as trustees to have the mortgaged property sold by a judicial sale;

and on the same day a decree of foreclosure and sale was issued to the corporate plaintiff ordering a sale of the property unless in the meantime payment should be made of the defaulted obligations. It was found by the court that parcel No. 3, the Chastleton Apartments, was subject to an outstanding incumbrance of $984,500; that parcel No. 5, Cathedral Mansions, center, was subject to an outstanding incumbrance of $626,500; that parcel No. 6, Connecticut Avenue and Davenport Apartments, was subject to an outstanding incumbrance of $720,000; that parcel No. 8, Stoneleigh Court, was subject to an outstanding incumbrance of $1,425,000; that parcel No. 10, 2700 Connecticut Avenue Apartments, was subject to an outstanding incumbrance of $300,000. It was ordered that the parcels thus incumbered should be offered for sale subject to the several incumbrances. It was also ordered by the court that the several tracts should be offered for sale separately, and following such offer the tracts should be offered for sale together, and that the greater offer of the two should be accepted. No appraisement of the tracts was required by the order of the court. The order provided that the first mortgage bonds secured upon the tracts as aforesaid should be accepted under conditions in part payment of the bids made for the property. It was ordered that a report of any sale when made should be returned to the court for its further action.

The record does not disclose that at or before this time any of the parties had filed exceptions to any of the rulings of the court in this case, nor given notice of an intention to appeal any of the decisions entered by the court; and although it is manifest that hearings were had upon the issues of fact raised in the proceedings, none of the testimony taken at such hearings is to be found in the record. The foregoing findings and orders of the court therefore are final and cannot be opened up by exceptions or appeals afterwards taken in the case in relation to the sale made in execution thereof. Turner v. Farmers Loan & Trust Co., 106 U. S. 552, 556, 1 S. Ct. 519, 27 L. Ed. 273.

It appears from the record that after a number of postponements the property was offered for sale on October 21, 1932, and was sold as a single piece to Milton Schilback and Paul Brunn, at a price of $2,800,000, subject to the incumbrances above noted. The aggregate amount of the incumbrances was $4,000,000. The bid was accepted if approved by the court and the purchasers immediately assigned, transferred, and set over unto the Washington Properties, Inc., representing the bondholders, all their rights under their bid. After due notice a report was made to the court on October 24, 1932, by the corporate appellee showing proceedings had under the court's writ.

On that day, to wit, October 24, 1932, objections were filed to the confirmation of the foreclosure sale by Harold H. Shaller, intervening bondholder, and on October 26, 1932, W. Bissell Thomas, as special intervener, filed a motion and petition to the court to set aside the sale of the property reported by the trustees. On October 28, 1932, appellant William B. O'Connell, as intervener, by leave of court filed a petition objecting to the confirmation of the sale. On October 28, 1932, appellant Alfred C. Torgeson, intervening petitioner, also filed objections to the confirmation of the sale. The objections of the intervening petitioners are to the effect that the incorporation of the Wardman Real Estate Properties, Inc., was brought about by the fraudulent conduct of Halsey, Stuart & Co. and Hambleton & Co., the New York bankers, who knew that the properties acquired by the corporation were insufficient to support the mortgage indebtedness imposed upon it, and who by means of false and fraudulent misrepresentations induced the public to subscribe for the bonds which are now in question. Objection was also made as to the price for which the property was sold. It was contended that the price was insufficient and that a court of equity should not confirm it. It is stated in the record that on November 3, 1932, six affidavits and five exhibits in support of the sale were filed. These affidavits and exhibits, however, are not incorporated in the record before us.

This issue was heard by the court on November 28, 1932, and December 1, 1932. The court held, in part, as follows:

"The court finds that the sale was fairly conducted and complied, in all respects, with the provisions of the decree of foreclosure and sale.

"The court has made a search of the evidence to discover whether the bondholders' committee did anything amounting to fraud, actual or constructive, to obtain an advantage over the nondepositing bondholders, to prevent fair competition, or to depress the price of the properties below the

fair market value. The evidence reveals the fact that approximately 93 percent of the bonds have been deposited with the committee, and that the committee, consistent with the rights of the depositing bondholders, has perfected its plan and agreement of reorganization. The bid here considered is the result of that plan. Although the sale was postponed several times, no other bidders have come forward. The evidence is persuasive of the conclusion that in no way other than by organized effort could the bondholders protect their interests as investors. The evidence does not indicate that there is any fair probability that any better bid would be received if another sale were ordered.

"The court regrets that the price received, approximating $6,800,000, does not bear a better relation to the assessed value and the market value, as testified to by various witnesses. The testimony of witnesses, expert in real-estate values in the city of Washington, indicates that all values are affected by the depression, which the court accepts as a general condition and recognized as existing in the local real-estate market. The court thinks that the condition so reflected in the evidence of these expert witnesses and in the bid here considered must be regarded as a fact, which must be weighed with the other evidence in the case in determining whether the price offered is an adequate one in a forced sale. The court must determine whether the amount here bid is an adequate price, in these times and at a forced sale, under all the circumstances revealed in the evidence. Nothing in the evidence gives hope for a better price if the bid is rejected and the property again offered for sale. Upon such conclusions the court is constrained to hold that the bondholders' committee has acted in a manner consistent with the rights and interests of the depositing bondholders, and that the committee has done nothing inconsistent with honesty of purpose and fair dealing. The court further finds that, under the evidence and the law, the price offered is adequate and should be accepted. The court is, therefore, prepared to sign an appropriate order confirming and approving the sale."

A decree confirming the sale was thereupon entered by the court. From this decree the appellants gave notice of appeal, and filed an appeal bond for costs under the statute.

Subsequently, on December 19, 1932, the bondholders' committee filed a petition for a modification of the decree in particulars not affecting the questions underlying the present appeal, and on December 19, 1932, over the objections of the appellants, the court granted the petition.

The record discloses that on December 22, 1932, a "statement of evidence" was filed, and that on February 21, 1933, the statement was stricken from the files by the court upon the ground that it was not submitted to the court within 45 days from the date of the filing thereof as required by the rules of the court. The appellants excepted to this ruling as erroneous. On February 6, 1933, the trustee filed a second report containing the computations based upon the sale showing a distribution of the proceeds of the sale and the amount due therefrom upon each one thousand dollars of bonds held by the nondepositing bondholders. The report was considered, approved, and affirmed over the objections of the appellants.

On February 20, 1933, an appeal was taken by the appellants from the court's order approving the second report of the trustee. The record discloses that the appellants objecting to the confirmation of the sale of the mortgaged property requested the court to make special findings of fact as follows: Eight findings concerning the value of the properties; thirty-four findings concerning the fairness of the sale and the conspiracy charged in the intervening petition of W. Bissell Thomas. In addition the objectors also moved the court to make special findings of each of the facts material and relevant to the issues, whether or not the facts are included in the foregoing requests. The objectors also moved the court to state conclusions of law based on the special findings of fact separately. The court overruled the motions of the interveners requesting the court to make specific findings of fact upon the ground that the important facts as shown by the opinion and evidence are set forth in the opinion of the court, which was filed herein and made a part of the record in this cause, and that such opinion is a sufficient compliance with the rule of the court upon this subject.

We find no error in the rulings of the court. Our conclusion based upon the very unsatisfactory record before us is that the charges of fraud made against the New

York bankers relative to the inception and organization of the Wardman Real Estate Properties, Inc., as a corporation and the issuance and sale of $11,000,000 of mortgage bonds secured by mortgage upon the real estate held by the corporation seem to be probably correct. But on the other hand, when it became apparent that the properties owned by the corporation were insufficient to pay the interest upon the bonds or the principal thereof, it was not fraudulent or illegal for the holders of the mortgage bonds to enter into a plan of co-operation whereby they might convert their bonds into the ownership of the mortgaged property. The proceedings held in pursuance of this, so far as the record discloses, were open and unobjectionable. This seems to be confirmed by the fact that out of the large number of bondholders only four are objecting to the proceedings, and these are holders of less than 1 per cent. of the outstanding bonds. The plan of reorganization adopted by the bondholders does not appear in the record, but it seems to have met with all but unanimous approval of the bondholders, and inasmuch as it does not appear that any onerous conditions were imposed upon any bondholder who desired to enter into the plan of reorganization, nor that any bondholder was excluded from the organization for any reason, it would seem to follow that no imposition was practiced upon the bondholders. It does not appear that there are any creditors of the corporation outside of the bondholders who might be prejudiced by the transaction in question. No such creditor appears to object to the proceedings shown by the record, nor indeed does the record indicate that there is such a creditor left unpaid. It appears from the record that there is apparently a second lien upon the property subordinate to that existing in favor of the present bondholders. The record discloses no objection made by such apparent lienholder to these proceedings. Consequently if the court were to set aside the present sale and order a resale of the property the only practical result would be to determine whether the appellants would realize more than at present for the bonds which they hold. The well-known conditions prevailing in the real estate market in the city of Washington and elsewhere at this time may well be considered in relation to such a course. It may be noted also that a resale of the property is not requested by the debtor corporation or by any of its stockholders or creditors other than the appellants, for such stockholders have consented to the foreclosure of the mortgage and have not objected to the sale of the property as reported.

It is our understanding of the record, imperfect though the record be, that the purpose of the bondholders in causing the present sale of the mortgaged premises is to convert the liens held by them into the ownership of the property in order that the parcels of property may be sold at private or public sale at favorable times in the interest of all the lienholders in proportion to their respective holdings. This purpose, however, must be accomplished without unjust prejudice to the holdings of any of the respective bondholders. The appellants complain that by reason of the low prices realized for the properties at the sale their respective interests have been prejudiced as compared with the value of the interests of the bondholders who became members of the bondholders' protective committee, who became the real purchasers of the property.

In order to satisfy this complaint we have decided to issue a partial and conditional mandate to the lower court to the following effect, and it is so ordered: That the appellants and each of them shall be entitled at any time within 90 days after the date of this order to file in the lower court their written election and consent to accept an equal proportionate interest in the property, as held by the purchasing corporation, with the same rights as if they had joined in the bondholders' protective committee prior to the date of the sale; that in event of such an election appellants would waive the receipt of the cash proceeds awarded to them by the order of distribution made by the lower court upon the basis of the present sale; that this arrangement shall be without penalty or extra charge upon any of the appellants; that in event appellants file such an election and the appellees refuse to accept and consent to the same the appellees shall file in court a notice of such action within 60 days after the expiration of the 90-day period; and thereupon the lower court is requested and directed to forward to this court a statement of the proceedings, if any, had under this provisional mandate, in order that we may make a final and conclusive decision upon the present appeal, to be followed by a final mandate to the lower court.

GRONER, Associate Justice (dissenting).

I think the order confirming the sale of the properties involved in this litigation was erroneously entered, and that the court below should have ordered a new sale and on materially different terms.

Leaving entirely out of consideration the facts tending to show fraud in relation to the original issue and sale of the bonds and assuming the foreclosure suit to have been in all respects regular, I think it perfectly clear the decree of sale imposed conditions which inevitably tended to throttle bidding and depreciate the value of the properties to be sold. The decree provided that the properties should be first offered separately and then as an entirety. This provision in an ordinary sale where the unity of the properties is apparent and the preservation of the unity necessary, would be quite in order, but in this case the properties offered for sale were so distinct and different in their characteristics that it was obviously in the interest of fair bidding that they should be sold separately. There were twelve parcels in all; one the Wardman Park Hotel, another the Carlton Hotel, another the Chastleton Apartments, another Cathedral Mansions, and others were large apartment buildings located in different parts of the city, the Department of Justice Building, the stock in trade of a drug store, and the automobile and garage supplies in a hotel garage. Some of the properties were incumbered by prior mortgage. Five of the properties were incumbered only by the mortgage then in process of foreclosure. In times like these it may be assumed that the ordinary investor in hotel properties, or in apartment buildings or in office buildings, would be unwilling to invest in all three classes. If, in view of this, the properties had been offered separately, each one upon the basis of its own value, it is entirely reasonable to think that many persons would have been interested in the sale and that a very much larger bid would have been received.

Another objection I find to the order of sale was the provision requiring all cash. The properties offered for sale are said to have cost in the neighborhood of twenty millions of dollars. They had been appraised some two or three years before for around twenty-eight millions. They had been mortgaged in the aggregate for something like fifteen millions. The offer of them at public auction for cash practically shut out all other bidders than the bond-holders' protective committee, thus leaving the bondholders who had not deposited their bonds wholly without any means of protection for their investment. It is quite true, as the opinion notes, that these nondepositing bondholders were an insignificant minority; but even so, they were entitled to have the properties sold for the largest amount which could in any circumstances be realized. As it was, it is not surprising that the only bidder was the representative of the bondholders' committee and the price bid at the sale grossly inadequate. As I have already pointed out, five of the properties, including the Wardman Park and Carlton Hotels, were free of underlying lien or mortgage of any kind. These properties when sold were assessed for taxation at approximately ten millions of dollars, and, yet, allowing no value to any of the equities, if there were any, of the properties sold subject to prior mortgage, the amount bid and accepted was only about 28 per cent. of the appraisal for taxation of the others, and was less, as was claimed, than the amount which the receivers of the properties had been offered for the Wardman Park property alone. When this gross disparity in value and bid price is considered in connection with the fact that no official appraisement was made of the properties prior to the sale, nor statement filed of the receivers of earnings of the hotels or the rents received from the apartments and office buildings, it is clear to me that the sale, notwithstanding it was in the interest of 99 per cent. of the bondholders, was not the sort of judicial sale which a court ought to approve and confirm. It is, of course, fundamental that no court ought ever to confirm a sale of property which it has taken over and administered, unless convinced that the sale has been fair and free and open equally to all bidders. Where the price is so grossly inadequate, as is the case here, it is obvious that there has been either mistake, misapprehension, or some other factor resulting in a sacrifice of the property, and in that case, even the fact that confirmation of the sale is in the interest of all but a small minority ought not to control. Nor do I think the optional provision found in the court's opinion, through which appellants may now deposit their bonds and enjoy the benefits of the purchase made by the bondholders' committee equally with the other depositing bondholders, changes the situation. Quite true, in the light of present-day conditions it is to their advantage

to exercise the right and put an end to the litigation, but the provision, though in the interest of appellants, is, as I view it, a mere makeshift, which is by no means the same as a fair sale of their properties to the highest bidder.

· · I am in disagreement with the opinion of the majority in thinking that the rule laid down by the Supreme Court in First Nat. Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391, is not applicable here.

Associate Justice HITZ joins with me in this dissent, and we are both of opinion that the decree below should be reversed and the case remanded to the court below, with directions to order a resale.