CENTRAL HANOVER BANK & TRUST
CO. et al. v. WARDMAN REAL ESTATE PROPERTIES, Inc.

No. 53117.

District Court of the United States for the District of Columbia.

Feb. 26, 1940.

Paul E. Lesh, of Washington, D.C., for Wardman Real Estate Properties, Inc.

William A. Gallagher, of Washington, D. C., for interveners W. Bissell Thomas and William B. O'Connell.

LUHRING, Justice.

The interveners, W. Bissell Thomas and William B. O'Connell, have filed two motions herein which were heard together on the 10th day of February, 1940.

The first motion, filed July 8th, 1939, suggests that the court sua sponte vacate orders and decrees heretofore entered, and make "such further orders and decrees as to equity may seem meet on the facts, all apparent on the face of the record, to which attention of the court is respectfully directed." This motion was filed during vacation and was not brought to the attention of the court until several months later.

The second motion, filed December 14, 1939, is "to set aside sale of mortgaged property, sequester the same and for other relief."

The Washington Properties, Inc., owner of the property, appears in opposition to the motions.

Each of the motions seeks a review of the record herein, and the relief sought is based on matters contained in the record. A synopsis of the record is appended to each of the motions. The contention of the interveners is generally stated in the first motion as follows: "The facts conclusively disclose (they are no where denied) that this was a collusive proceeding instituted in accordance with a corrupt agreement entered into or later joined by all the parties who financially benefited, not only to defraud the First Mortgage Bondholders, but also to perpetrate the fraud upon this Court. The entire record shows that all the parties to this proceeding, as well also as the parties connected with the entire foreclosure and reorganization, conspired together to carry out a pre-conceived plan, not only to commit a fraud upon this Court but to cheat the First Mortgage Bondholders out of property lawfully belonging to them, and that by reason of their acts they had not come into equity with clean hands."

The bill to foreclose was filed in this court July 14, 1931 by the Central Hanover Bank and Trust Company and Frank Wolfe, Trustees, against Wardman Real Estate Properties, Inc. On the same day the defendant, Wardman Real Estate Properties, Inc., filed its answer in the suit admitting the averments of the bill to be true and consenting to the appointment of a receiver as therein prayed.

Afterwards, on July 24, 1931, the bill was amended by making the Riggs National Bank of Washington, D. C., a junior mortgagee, an additional party defendant.

On July 29, 1931, Alfred C. Torgeson intervened. His petition alleged certain fraudulent methods pursued by the New York bankers in the transaction, and prayed that they be made parties defendant and judgment rendered against them for the losses of the bondholders; that an order theretofore made appointing receivers pendente lite be rescinded, and another receiver appointed, wholly independent of and disconnected with the New York bankers; and that the trustees be enjoined and restrained from foreclosing "until the independent bondholders, freed from the domination of the bankers and the alleged bondholders' committee formed at the instance and for the protection of the said bankers,

shall have had time to formulate and submit a feasible plan of reorganization in the interest of said bondholders."

On August 3, 1931, a bondholders' protective committee, by leave of court, filed an intervening petition alleging that such committee represented 74 per cent of all of the bonds issued and outstanding; that the averments of the bill of complaint are true and asked that the prayer of the bill be granted.

Upon these issues a trial was had by the court, and on October 14, 1931, a decree of foreclosure and sale was entered. There was no appeal from this decree.

After a number of postponements, the mortgaged property was offered for sale on October 21, 1932 and sold to Milton Schelbach and Paul Brunn at $2,800,000, subject to encumbrances amounting to $4,000,000. The purchasers immediately assigned, transferred and set over unto the Washington Properties, Inc., representing the bondholders, all their rights under the bid. After due notice a report was made to the court on October 24, 1932.

On October 26, 1932, W. Bissell Thomas, as special intervener, filed a motion and petition to the court to set aside the sale of the property reported by the trustees. On October 28, 1932, William B. O'Connell, intervener, by leave of court, filed a petition objecting to the confirmation of the sale. On October 28, 1932, Alfred C. Torgeson, intervening petitioner, also filed objections to the confirmation of the sale.

The objections of the intervening petitioners are based on alleged fraudulent conduct of the New York bankers, not only in making the original loan and fraudulently inducing the public to subscribe to it, but also in the proceedings leading up to the foreclosure of the mortgage and sale of the properties. Objection was also made to the sufficiency of the price bid for the property.

The issues raised were heard by the court. The plan of reorganization was filed November 3, 1932 and was considered by the court at the hearing along with other testimony.

The court, on November 28, 1932, filed its memorandum and therein dealt with the issue of fraud. This memorandum in part is as follows:

"The court has made a search of the evidence to discover whether the bondholders' committee did anything amounting to fraud, actual or constructive, to obtain an advantage over the nondepositing bondholders, to prevent fair competition, or to depress the price of the properties below the fair market value. The evidence reveals the fact that approximately 93 percent of the bonds have been deposited with the committee, and that the committee, consistent with the rights of the depositing bondholders, has perfected its plan and agreement of reorganization. The bid here considered is the result of that plan. Although the sale was postponed several times, no other bidders have come forward. The evidence is persuasive of the conclusion that in no way other than by organized effort could the bondholders protect their interests as investors. The evidence does not indicate that there is any fair probability that any better bid would be received if another sale were ordered.

"* * * Upon such conclusions the court is constrained to hold that the bondholders' committee has acted in a manner consistent with the rights and interests of the depositing bondholders, and that the committee has done nothing inconsistent with honesty of purpose and fair dealing. * * *"

A decree confirming the sale was entered by the court December 1, 1932. The interveners, W. Bissel Thomas and Alfred C. Torgeson and another, appealed to the United States Court of Appeals for the District of Columbia. That court, on September 24, 1934, affirmed and issued a partial and conditional mandate allowing the appellants to file "their written election and consent to accept an equal proportionate interest in the property, as held by the purchasing corporation, with the same rights as if they had joined in the bondholders' protective committee prior to the date of the sale." Thomas et al. v. Central Hanover Bank & Trust Co., 64 App.D.C. 96, 75 F.2d 227, 232. The intervener, William B. O'Connell, availed himself of this privilege. A rehearing was denied November 19, 1934. The final mandate of the appellate court was duly filed and docketed in this court on the 13th day of May, 1935. So we have a final decree of this court confirming the sale of this property, and, approximately four years after that decree became final by mandate of the United States Court of Appeals for the District of Columbia, a proceeding in this court to vacate it and all antecedent proceedings.

■ The motions to vacate must be considered, if at all, pursuant to Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. That rule gives the court power "to entertain an action to relieve a party from a judgment, order, or proceeding."

Under the former procedure the general rule was that the court had no power to set aside its final orders and decrees after the term at which they were rendered. However, Rule 6(c) of the Rules of Civil Procedure provides that "the expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it."

■ The ancillary proceeding by bill of review was resorted to in equity to open up and, if proper, vacate or modify orders, judgments or decrees. That right is preserved by the saving clause of Rule 60(b), above quoted, and its exercise will be governed by the procedure as it formerly obtained in proceedings in equity.

■ The court will treat these motions as bills of review because the relief sought is that commonly sought by such a bill.

■ The intervener, William B. O'Connell, is estopped from seeking a review because he has accepted the benefits of the decree by taking advantage of the right given him by the partial and conditional mandate of the United States Court of Appeals and accepting a proportionate interest in the property as held by the purchasing corporation. Hill v. Phelps, 8 Cir., 101 F. 650.

■ It is to be noted that the motions herein were each filed without leave either of the United States Court of Appeals for the District of Columbia or this court.

■ After a final decree has been entered in accordance with the mandate of the appellate court, a bill of review can be entertained only with its consent. Obear-Nester Glass Co. v. Hartford Empire Co., 8 Cir., 61 F.2d 31; Hagerott v. Adams, 8 Cir., 61 F.2d 35; Power Specialty Co. v. Connecticut Light & Power Co., D.C., 39 F.2d 493.

The rule is well stated in Obear-Nester Glass Co. v. Hartford Empire Co., supra, 61 F.2d at page 34, as follows: "Where there has been no appeal, the defeated party may, in a proper case, and within proper time, on leave of that court first had and obtained, file in the trial court a bill of review. Where, however, the decree of the trial court has been appealed from and has been disposed of by the appellate court, either by affirmance or reversal, then the trial court may not entertain a bill of review, nor permit it to be filed without leave first granted by the appellate court, because after decision by the appellate court, the decree of the lower court becomes the decree of the appellate court." See, also, Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 91, 42 S.Ct. 196, 66 L.Ed. 475; National Brake & Electric Co. v. Christensen, 254 U.S. 425, 41 S.Ct. 154, 65 L.Ed. 341; In re Potts, 166 U. S. 263, 17 S.Ct. 520, 41 L.Ed. 994.

The United States Court of Appeals for the District of Columbia had before it the record here sought to be reviewed. It dealt with the issue of fraud and its conclusion was that "the charges of fraud made against the New York bankers relative to the inception and organization of the Wardman Real Estate Properties, Inc., as a corporation and the issuance and sale of $11,000,000 of mortgage bonds secured by mortgage upon the real estate held by the corporation seem to be probably correct."

However, that court found that "it was not fraudulent or illegal for the holders of the mortgage bonds to enter into a plan of co-operation whereby they might convert their bonds into the ownership of the mortgaged property," and, with respect to the plan of reorganization, has this to say: "The plan of reorganization adopted by the bondholders does not appear in the record, but it seems to have met with all but unanimous approval of the bondholders, and inasmuch as it does not appear that any onerous conditions were imposed upon any bondholder who desired to enter into the plan of reorganization, nor that any bondholder was excluded from the organization for any reason, it would seem to follow that no imposition was practiced upon the bondholders."

The record before the Court of Appeals was not a satisfactory one. The testimony taken by the court on the objections to the confirmation of the sale was not included, because the appellants failed to submit their statement of evidence within the time required by the then existing rule and it was stricken. The memorandum of November 28, 1932 was based on this testimony.

■ The motions under consideration require the court to look to the evidence. A party is not at liberty to go into the evi-

dence at large in order to establish an objection to the decree founded on the supposed mistake of the court in its own deductions from the evidence. Whiting v. Bank of United States, 13 Pet. 6, 14, 10 L.Ed. 33; Buffington v. Harvey, 95 U.S. 99, 24 L.Ed. 381; Shelton v. Van Kleeck, 106 U.S. 532, 1 S.Ct. 491, 27 L.Ed. 269; McGowan v. Elroy, 28 App.D.C. 84; Adriaans v. Reilly, 27 App.D.C. 167.

The motions must be stricken, and it is so ordered.

Counsel will submit appropriate decree.