**THOMAS et al. v. PEYSER et al.**

No. 7528.

United States Court of Appeals for the
District of Columbia.

Jan. 6, 1941.

W. Bissell Thomas, William B. O'Connell and William A. Gallagher, all of Washington, D. C., for appellants.

Paul E. Lesh and Hugh H. Obear, both of Washington, D. C., for appellees.

Before GRONER, C. J., and EDGERTON and RUTLEDGE, JJ.

RUTLEDGE, Justice.

The appeal is from an order of the District Court dismissing appellants' petition for allowance of attorneys' fees out of funds in the hands of receivers, appellees Peyser and Tumulty.

The pertinent facts are substantially as follows: July 2, 1931, appellants as attorneys for Leslie M. Shaw filed a bill for receivership and foreclosure of the property of Wardman Real Estate Properties, Inc. After the defendants named in the bill, including the present appellee Central Hanover Bank & Trust Company, had been served and had appeared, on July 10, 1931, appellants as attorneys requested and were granted ten days within which to amend their bill. July 14, 1931, the appellees began the present receivership proceeding, and obtained from another justice the appointment of receivers. July 24, 1931, after amending their bill, appellants as attorneys sought to enjoin the prosecution of the later receivership proceeding, but the injunction was denied on September 30, 1931. The Shaw suit was dismissed later on motion by the defendants therein. It was appellants' position at the outset, and they have consistently maintained by various forms of attack on the subsequent receivership proceedings, that the receivership and the corporate reorganization which developed under it were collusive and fraudulent. The basis for this claim has been that secondary creditors of the old corporation were given preference over the first mort-

gage bondholders by a reorganization committee (known as the "bondholders' protective committee") which was secretly controlled by the secondary creditors. Some of the details of this reorganization, together with evidence of appellants' diligence in combatting it, may be found in Thomas v. Central Hanover Bank & Trust Co., 1934, 64 App.D.C. 96, 75 F.2d 227, a former appeal in the pending receivership proceeding.

Appellants' petition, filed May 25, 1939, recited most of the facts stated above, together with others, some of which will appear later; alleged that they had performed valuable services to the first mortgage bondholders by doing "everything legally possible to protect" their interests; alleged that the receivers held a fund of $200,000 which was subject to proper charges growing out of the receivership; and prayed that they be allowed attorneys' fees in the amount of $1,000 for the services allegedly performed by them. June 2, 1939, a motion to dismiss the petition was filed and it was granted June 22, 1939. On June 30, 1939, appellants filed a motion requesting the trial court to make findings of fact. This was denied. The appeal is taken from these actions of the court.

Appellants contend that they are entitled to be reimbursed out of the common fund because: (1) they brought the property into court; and (2) they have protected the property from wrongful diversion and deflation in value by services rendered in connection with the pending receivership, chiefly by action in the nature of opposition to various steps taken in the course of its administration by the lower court. It is well settled that if one who has an interest in a common fund brings a successful suit to preserve, protect or increase that fund, or if he creates or brings into court a fund in which others may share with him, he is entitled to an allowance of counsel fees to be paid out of the fund. Trustees v. Greenough, 1881, 105 U.S. 527, 26 L.Ed. 1157; Notes, 1927, 49 A.L.R. 1149; 1937, 107 A.L.R. 749; cf. Fletcher v. Coomes, 1922, 52 App.D.C. 159, 285 F. 893. The principle which supports the rule is that the benefit of the suit enures not only to the one who brought it, but also to all others entitled to participate in the fund so created, increased or protected, and therefore, when the claimant is an attorney, the law will imply an attorney-client relationship as to all who accept the benefit. We

think the rule is not applicable to the facts of this case.

■ I. The short reason which might be assigned for this is that neither appellants' original receivership proceeding nor other actions taken by them in connection with the pending one (with an asserted exception which we do not regard as sufficient to justify relief) have been successful. Uniformly their efforts have resulted in failure. As the principle has been applied by the courts, success has been an essential condition of recovery. No case has been cited or found in which unsuccessful efforts have been rewarded as appellants claim they are entitled to have done here. Benefits normally flow only from successful action.[1] Even if suit is successful, attorneys' fees may not be allowed unless some benefit is conferred.[2] Perhaps the reason for the limitation is not only that benefits generally do not flow out of efforts which fail (on the contrary actual harm may ensue by dissipation of assets in the expense of the litigation), but that such benefits as might arise would be too speculative, remote and indefinite to permit allowance of the claim for creating them, in the absence of the concrete measuring rod of success.

■ But the fact that relief of a particular sort has not been given previously is not conclusive that it should not be granted,[3] although ordinarily it is highly persuasive to that effect. Growth in the law requires advance from time to time into new areas of liability. Here appellants' claim, in effect, is that such an advance should be made. They assert that despite their failure their efforts have created benefits in fact and in one instance were successful. The argument so put requires further consideration, upon principle and upon the facts of the case.

II. Appellants say they "brought the property into court" by filing their re-

ceivership proceeding, although it was later dismissed without appointment of receivers, and receivers were appointed in the second suit. Their argument is two-fold: (1) that by filing their suit they brought about the filing of the second one, and in consequence not only brought the property within the court's jurisdiction but also brought about the benefits which enured from the subsequent proceedings in the second suit; (2) that by filing the first suit for receivers they (or their client) acquired a right to have receivers appointed and to carry forward the receivership, with the consequence of course that the second suit rather than the first should have been dismissed.

In support of the first reason, appellants say that the second suit was commenced fraudulently and surreptitiously in order to defeat their prior one; that the appointment of receivers was obtained without notice to them or their client and without knowledge by the justice who appointed them that a prior suit was pending;[4] and that the suit was in fact but a step in the alleged conspiracy to defraud the first mortgage bondholders. Notwithstanding the later suit was successful and theirs was dismissed, appellants assert that it was the filing of their suit which caused the plaintiffs in the second one to rush into court in order to secure control of the litigation and prevent them and their client from doing so. Consequently, it is claimed, but for the filing of the first, the second would not have been commenced and therefore the benefits which accrued from it must be attributed to their action in filing the first one.

The argument amounts to an effort to apply in the present circumstances the "but for" rule of causation, which has been applied in others but rarely and dubiously. Except as to facts which have been adjudicated in previous phases of this litigation, we find nothing in the record to show

---

[1] Cf. Anderson v. Fidelity & Deposit Co., 1897, 100 Ga. 739, 28 S.E. 463; West v. Rector of St. James' Episcopal Church, 1914, 83 N.J.Eq. 324, 91 A. 101; In re Rosenberg's Estate, Surr.Ct.1933, 147 Misc. 517, 266 N.Y.S. 99, affirmed, 1934, 241 App.Div. 601, 268 N.Y.S. 733, affirmed, 1934, 265 N.Y. 521, 193 N.E. 302.

[2] Cf. Fletcher v. Coomes, 1922, 52 App. D.C. 159, 285 F. 893; General Finance Corp. v. New York State Rys., W.D. N.Y.1933, 3 F.Supp. 975; In re Vetter, 1896, 66 Minn. 135, 68 N.W. 850; In re Skoll, 1898, 71 Minn. 508, 74 N.W.

286; Roller v. Paul, 1906, 106 Va. 214, 55 S.E. 558.

[3] The situation in which the question has not been ruled upon must be distinguished, of course, from that in which it has been presented and decided adversely to the extension of relief. In the latter, the principle of stare decisis is applicable, while in the former its rigid application would prevent any growth in the law.

[4] In the interim between the filing of the two complaints, the justice assigned to hear such matters was succeeded by another justice in that assignment.

that the contention is based on anything more substantial than the time sequence in the commencement of the two proceedings. That in itself, of course, is hardly probative that filing the first induced filing of the second suit. To the contrary, both the record and appellants' argument show that the second one was planned long before appellants filed the first one. This is implicit in their charge that the later suit was but a step in the alleged conspiracy to defraud. In view of this, the conclusion is equally tenable, though we do not draw it, that appellants' suit was begun in order to anticipate and defeat the other one.

But we are not at liberty on this appeal to determine whether the pending suit was begun fraudulently, surreptitiously or to defeat the earlier one. Those issues have been determined adversely to these contentions in previous phases of this litigation. The trial court not only dismissed the suit filed by appellants, but also denied an injunction which they sought against prosecution of the later one. A special appeal from this denial was refused by this court. These actions were taken, of course, when the court was fully advised of the pendency of both suits and it must be assumed that it would have given the earlier one preference if it had found that the later one was designed merely to forestall it or that for any reason it was entitled to preference. The record shows that the bill filed by appellants was dismissed for multifariousness, even after it had been amended in an effort to perfect the statement of the cause of action. Although appellants may not have been technically parties to the litigation when these determinations were made, they acted as attorneys and by filing their claim in the pending proceeding must be taken to have accepted them for the purposes of disposing of it. They have in effect made themselves parties to the suit for this purpose and to that extent they and we are bound by previous decisions made in the course of it. The effect of this for present purposes is that we cannot reconsider these matters with a view to their bearing upon a possible benefit conferred by appellants, as they claim, in inducing the filing of the second suit through the filing of the first. To hold now that the filing of the first suit induced the filing of the second would be, in effect, to rule that the second was begun in order to forestall the first, and thus, for the purpose before us, determine that issue and others decided in the previous rulings contrary to them. This we cannot do.

▆ Finally, if the question were open, we do not believe that compensation should be granted for so indirect a benefit as the mere inducement of another to bring the suit which results in protection, and distribution of the fund. There is an interest in preservation of the fund from dissipation through the payment of attorneys' fees and expenses of litigation when these are not directly and demonstrably beneficial which is as strong as that which requires their payment when they are so. Allowance of attorneys' and receivers' fees in receivership proceedings has been the subject of sharp criticism.[5] The courts have gone far in allowing such fees when those who receive them are parties or attorneys for parties in the litigation. Even so, they have refused to make such awards to mere volunteers. Granting that appellants have or represent a direct and substantial interest, the present is not the time to extend the permissible scope of such allowances. The direction of policy is in the opposite way. The alleged benefits resulting from inducement of litigation which itself produces benefits for which awards may be made are highly speculative and at best indirect. Possibly circumstances might be shown in which the benefits from unsuccessful litigation or other action inducing successful litigation would appear so clearly that an award should be made. But this would require a strong case, much stronger than that presented here. We think that appellants have not shown that any action of theirs brought the property into court, created the fund or induced the successful litigation which created and protected it. On the contrary the benefits of that litigation must be attributed to the parties who instituted and have carried it through.

What has been said disposes sufficiently of the argument that by filing the first suit appellants (or their client) acquired a right to have receivers appointed and to carry forward the receivership as against those who brought the later one. That has been determined adversely to appellants' view

5 See Trustees Corp. v. Kansas City, M. & O. Ry., 8 Cir., 1928, 26 F.2d 876, especially the concurring opinion of Judge Kenyon at page 882; New Orleans v. Malone, 5 Cir., 1926, 12 F.2d 17; cf. National Benefit Life Ins. Co. v. Shaw-Walker Co., 1940, 71 App.D.C. 276, 288, 111 F.2d 497.

and we cannot reopen the question on this appeal. The case is not one of conflicting jurisdiction of courts, in which the filing of suit gives "constructive possession" to the first of two having concurrent jurisdiction for the purpose of determining which should exercise it.[6] The two suits here were filed in the same court, which had full jurisdiction over both and to determine in which suit its jurisdiction should be exercised. Even if that determination had been made erroneously, which we do not assert, the error was not jurisdictional and is not open for consideration on this appeal for reasons already stated. Cf. National Benefit Life Ins. Co. v. Shaw-Walker Co., 1940, 71 App.D.C. 276, 111 F.2d 497.

**III.** What has been said above applies with equal force to the claim that appellants have protected the property or fund from wrongful diversion and deflation in value by services rendered in connection with the pending receivership subsequently to its institution. As we have said, these were chiefly in the nature of opposition to various steps taken in the course of the administration. Appellants' theory is that their efforts in this respect have acted as a negative catalyst to prevent fraud in the reorganization. Perhaps a vigilant opposition may be admitted to have a beneficial effect in these matters as in others, by inducing caution in administration. But absence of it raises no presumption that due care will not be exercised, particularly when, as here, the administration is directly under the supervision of the court. Rather the presumption is to the contrary. The inference of benefit is therefore highly speculative, in the absence of a showing of some successful challenge to proposed action which increases the fund or protects it from loss.

In two respects particularly appellants assert that their action resulted in concrete benefits: (1) in obtaining for the first mortgage bondholders a larger share or interest in the reorganized corporation than they would have received otherwise; (2) in causing one of the largest secondary creditors (a banking corporation) to "lose its grip."

As to the first of these, it is based on the theory that appellants "were in the suit striving to protect" the rights of the bondholders, "and their efforts acted as a very potent brake, and were doubtless of great value in restraining a greater disregard of the interests which they were maintaining should be protected by the Court." The argument is premised upon the assumption that the interests of the first mortgage bondholders were disregarded in the reorganization and were not protected by the trial court. But this also has been adjudicated conclusively against appellants' contentions.[7] We cannot therefore assume that appellants conferred any benefit upon these bondholders by preventing "greater disregard" of their rights. Further, even if it could be supposed that they acted as substitutes for conscience in admonishing both receivers and court to perform their duty, the claim could not be allowed. Where the duty of the court and receivers is evident, attorneys' fees cannot be awarded to one who voluntarily comes into court to point out that duty, whether in friendly or in unfriendly litigation.[8] Otherwise, a fund could be completely dissipated by numerous intervenors eager to assist the court and the receivers. As in the case of alleged inducement of successful litigation by that which is unsuccessful, the benefits from unsuccessful opposition to steps in the course of litigation, if they exist at all, are too speculative and remote to be made the basis for allowance of attorneys' fees.[9]

Concerning the claim that appellants benefited the fund by causing the large secondary creditor to "lose its grip," this too is not substantiated by the facts. It may be taken as admitted by the motion to dismiss that what caused this creditor to withdraw was appellants' obtaining of an indictment against an official of the company

[6] Cf. Harkin v. Brundage, 1928, 276 U. S. 36, 48 S.Ct. 268, 72 L.Ed. 457.

[7] See Thomas v. Central Hanover Bank & Trust Co., 1934, 64 App.D.C. 96, 75 F. 2d 227, certiorari denied, 1935, 294 U.S. 726, 55 S.Ct. 636, 79 L.Ed. 1257; Ex parte Thomas and O'Connell, 1940, —— App.D.C. ——, 114 F.2d 847.

[8] General Finance Corp. v. New York State Rys., W.D.N.Y.1933, 3 F.Supp. 975; Strang v. Taylor, 1887, 82 Ala. 213, 2 So. 760; Anderson v. Fidelity & Deposit Co., 1897, 100 Ga. 739, 28 S.E. 463; Attorney General v. North American Life Ins. Co., 1883, 91 N.Y. 57, 43 Am.Rep. 648; cf. In re Rosenberg's Estate, Surr.Ct.1933, 147 Misc. 517, 266 N.Y.S. 99, affirmed, 1934, 241 App.Div. 601, 268 N.Y.S. 733, affirmed, 1934, 265 N.Y. 521, 193 N.E. 302.

[9] Cf. Standard Lumber Co. v. Interstate Trust Co., 5 Cir., 1936, 82 F.2d 346; Lewis v. Gaillard, 1915, 70 Fla. 172, 69 So. 797.

in Milwaukee. It does not follow necessarily that the fund was saved from diversion by this withdrawal. Assuming that appellants could have proved that the withdrawal was beneficial to the bondholders, that would not entitle them to attorneys' fees. The indictment was obtained of course in an entirely separate proceeding, in connection with other bonds; and it has no pertinency to this case except for the indirect effect which appellants claim for it. It could not be maintained, for example, that an attorney in a successful breach of trust suit could recover attorney's fees from every trust estate whose trustee could be proved to have been restrained from similar breaches by knowledge of the result of that suit. Yet that attorney would be conferring a benefit fully as direct as that claimed by plaintiffs in this case. In this, as in other respects, the benefit, if any, resulting from appellants' action was speculative and remote.

There is no merit in appellants' contention that the trial court should have made findings of fact. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, requires findings "in all actions *tried upon the facts*." (Italics supplied.) This case was not tried upon the facts. The facts were admitted by the motion to dismiss. Obviously there need be no fact findings where facts are not in issue. The only issues determined by the trial court were questions of law and these adequately disposed of the case.

The order is affirmed.