## JOSÉ TAYA'S SONS CO., OF NEW ORLEANS, v. COMPANIA ARRENDATARIA DE TOBACOS DE ESPANA.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 223.

1. Admiralty ⬤⟳5—Court held to have properly assumed jurisdiction.

Libelant, an American corporation, as agent for a Spanish shipowner, contracted for carriage of a cargo from the United States to Spain with an American firm, which was acting as agent for a Spanish corporation, but such fact was not known to libelant. *Held*, that a court of admiralty of the United States should not decline to take jurisdiction of a suit by libelant against the undisclosed principal to recover freight under the contract.

2. Evidence ⬤⟳37—Laws of foreign country to be proved as facts.

A law of Spain, which affects only persons within its jurisdiction, when invoked in a court of the United States, must be proved as a fact.

―――

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Shipping ⊙⊸147—Contract of carriage held valid under Spanish law.**

Under a Spanish royal order fixing a maximum rate of freight on tobacco from the United States to Spain, with a proviso that "agents abroad of Spanish vessels shall charge freely according to the varying exigencies of the moment in the market, and shall abide by the prevailing rates," a contract for a higher rate, made by an American agent of a Spanish shipowner, *held* valid and enforceable.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by José Taya's Sons Company, of New Orleans, against the Compania Arrendataria de Tobacos de España. Decree for libelant, and respondent appeals. Affirmed.

Respondent appeals from a decree of the District Court awarding to libelant $36,107.98, with interest. Libelant will be referred to as Taya's Co., and respondent as Compania, and Kremelberg & Co. as Kremelberg.

Taya's Co. is a Louisiana corporation, which was acting as agent for the steamer Rita and its owner, Hijos de José Taya, a Spanish firm having its main office in Barcelona. Kremelberg was an American partnership, which was the agent of Compania, which is a Spanish company, familiarly referred to as the Spanish Tobacco Monopoly, having its office at Madrid. By Freije, its vice president, Taya's Co. entered into a freight contract with Kremelberg through Magnus, a ship broker, providing for the carriage of 1,000 hogsheads of Kentucky leaf tobacco on the Rita in February, 1919, to Santander, Spain, at an agreed rate of $66 per 40 cubic feet.

The District Court found as a fact, and we accept the finding, that Freije had no knowledge of the relations between Kremelberg and Compania and assumed that Kremelberg were acting for themselves in making the contract. After the cargo had been loaded, Kremelberg notified Taya's Co. that expected drafts had not arrived, and requested Taya's Co. to issue a bill of lading providing for payment of freight at port of destination. Under date of February 21, 1919, Kremelberg wrote a letter to Taya's Co., which, after making the request indicated, stated: "We acknowledge that freight is earned, ship lost or not lost, and consequently take this opportunity to assure you that we have insured the ocean freight charges against both marine and war risk." Complying with this request, Taya's Co. wrote on the bill of lading, which had been dated February 17, 1919: "Freight payable at port of destination."

The ship sailed in due course, and the tobacco was discharged in Spain in proper condition, but the freight was not paid in accordance with Kremelberg's agreement. The master then commenced what is known in Spain as a "voluntary proceeding" in an attempt to hold the cargo for the freight. This proceeding was of a kind familiar to our jurisdiction as a proceeding in rem, and was not a suit in personam against Compania, nor was it under Spanish procedure considered as a litigation between parties. Compania intervened, and raised the point that under Spanish law the steamship could not collect a rate higher than 66 centimos per kilo, which amounted to $97,395.51. This intervention ended the voluntary proceeding and created a situation of litigious proceedings. Compania thereupon tendered the amount of undisputed freight, offered a cash deposit to secure the disputed balance, and demanded the release of the tobacco. After protest, the master of the vessel consented to the order releasing the offered security and dismissing the proceedings without prejudice to Taya's Co.'s right to take any other action it might see fit for a recovery of the balance of freight. The cargo was released and an order without prejudice was duly made.

Demand of payment of the balance due on the freight was then made of Kremelberg by Taya's Co., and Kremelberg for the first time, on June 23, 1919, informed Freije that "they were only the agents in this country of the Compania," and could do nothing further than to submit the demand to their principals. Certain proceedings were had in the District Court for the South-

⊙⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ern District of New York, in the course of which an agreement was entered into by which a New York bank agreed to hold $40,000 belonging to Compania to pay the amount of any ultimate recovery in either of the two suits brought by Taya's Co., namely, this suit and one against the Kremelberg partnership.

It appears that by virtue of a royal order of the Spanish government, dated January 31, 1919, the maximum rate of freight on tobacco from the United States to Spain was 66 centimos per kilo. On the current rate of exchange, if this royal order was applicable, Taya's Co. was not entitled to more than $97,395.51; i. e., less than the agreed freight. One of the provisions of this royal order was as follows:

"Article 3. The agents abroad of Spanish vessels shall charge freely according to the varying exigencies of the moment in the market, and shall abide by the prevailing rates."

Taya's Co. contends that, if the contract is controlled by the Spanish law, then this provision is in its favor and permitted it to contract freely in a foreign port with Kremelberg. Judge Augustus N. Hand held that Kremelberg was the agent for Compania, that the latter was liable under the contract, and that the clause quoted supra permitted Spanish shipowners freely to contract in ports outside of Spain.

George H. Corey and James K. Symmers, both of New York City, for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine and Harry D. Thirkield, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. [1] No question is raised as to the jurisdiction of the District Court as matter of right between the libelant Louisiana corporation and the respondent. The point most strongly urged and ably argued is that the court below, as matter of discretion, should have declined to entertain jurisdiction on the ground that the real contracting parties were Spanish subjects, that the subject-matter of the contract was controlled by Spanish law, and that, in view of the conflict of testimony as to the interpretation of the Spanish law, the courts of Spain were more competent to construe the Spanish law than the courts of this country.

If each contracting party knew that the other was a Spanish subject, the suggested question of discretion might be seriously debatable. The situation, however, is quite different when the fact, as found, is that one of the parties, in this instance the steamship company, supposed that it was contracting with American citizens and prior to the contract was not informed to the contrary. Had libelant known that it was contracting with Compania, it might very well have preferred to reserve this freight space for some shipper other than a Spanish subject, and thus have obtained freight at a rate in excess of that which was permissible under the royal order as between Spanish subjects. While libelant is the agent of a Spanish steamship, it is nevertheless an American corporation, and, as such, is subject to taxes and all the other duties and obligations resting upon similar corporations. It therefore is entitled to bring a cause into the appropriate court, and on the facts in this case we think we cannot justly shirk responsibility of decision and remit the parties to a litigation in Spain. If it be held that the Spanish law does not apply, obviously libelant was entitled to

the recovery asked, in view of the due performance of its contract, and the undisputed fact that Compania was the undisclosed principal, which is now known.

[2] Passing by various points urged by libelant in support of the decree below, we shall approach the consideration of the case from the standpoint most favorable to Compania and that is that the Spanish law applies. The royal order here involved was of a character which affected only persons within the jurisdiction of Spain, and comes within the class described by Chief Justice Marshall in The Amelia, sub nom. Talbot v. Seeman, 1 Cranch, 1 and 37, 2 L. Ed. 15, when he stated:

"That the laws of a foreign nation, designed only for the direction of its own affairs, are not to be noticed by the courts of other countries, unless proved as facts * * * cannot be questioned."

See Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 445, 446, 9 Sup. Ct. 469, 32 L. Ed. 788; Chamberlayne on Evidence, § 1211 et seq.; 16 Cyc. 896 et seq.; 15 R. C. L. 1069–1071; 25 R. C. L. 948; The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126.

[3] What, as matter of fact, is the Spanish law in this case, in the sense of its meaning and construction was therefore provable by expert testimony. The provision requiring construction is article 3 of the royal order, quoted supra. Experts were called by both sides, and there was an interesting conflict between their testimony. Leonardo Rodriguez had been minister of supplies, and as such had exclusive jurisdiction over the regulation of the freight charges set forth in the royal orders of the ministry, and had studied, among others, the royal order of January 31, 1919, promulgated by the ministry. On behalf of Taya's Co., he testified that, as the Rita was not under requisition, the freight rate "could be contracted freely under the provisions of article 3 of the aforesaid royal order of January 31, 1919, without being limited to the standard rate fixed in the same royal order, because such standard rate refers only to requisitioned vessels and to contracts made in Spain," and that in the circumstances of this case the contract was permitted by the terms of article 3, and that the freight should have been paid, at the contract rate.

With regard to the reasons for including the provisions of article 3 in the order of January 31, he testified that the ministry of supplies recognized the burden which the freight limitations placed on certain classes of citizens, and that the ministry was endeavoring to alleviate this situation as much as possible. He said:

"It was with this in view, precisely, that article 3 was inserted in the royal order above mentioned in order that the Spanish shipowners, who were already carrying the burden of certain restrictions for the benefit of the country at large, should not be subject to those restrictions except in those cases in which the state deemed it necessary for the national service. * * *"

Luis Rodriguez de Viguri, a member of the "illustrious bar of Madrid" and honorary academician of the Royal Academy of Jurisprudence, apparently an official of high equipment, testified to the same effect, and also testified that he had prepared a reply in response to a letter from Taya's Co. on behalf of the Spanish committee on

maritime traffic, which had issued the royal order, acknowledging the freedom of foreign agents to contract without respect to the freight rates prescribed by the order by reason of the provisions of article 3. Calvell, another witness, testified similarly.

In opposition to the foregoing, Manuel Andujar, a captain in the Spanish navy, testified to the contrary on behalf of the Compania, as did also Juan Romero Araoz, also a navy captain. These witnesses also testified that, in reply to the inquiry of Compania, the committee had ruled that the freight was subject to the limitation of 66 centimos per kilo; but on cross-examination it appeared that this inquiry was confined "to inquiring what the freight rate was on the transportation of tobacco made by the steamship Rita." In other words, it does not appear that the ruling of the committee was based on a full and correct statement of facts. While, therefore, the ruling of the committee ordinarily would have been a fact of great importance in determining what the Spanish law was, such importance does not exist when it does not appear that the vital fact was before the committee upon which to base a ruling serviceable for the purpose of interpreting the Spanish law, namely, that the contract was made in a foreign port and with an American business concern. In addition to the foregoing is the testimony of a similar tenor in support of Compania given by Edwardo Cobian y Fernandez de Cordobo, apparently a lawyer of standing.

Reviewing the testimony of the experts, we are of opinion that the District Court was fully justified in concluding that the "inevitable meaning" of article 3 was that the freight agreement was valid under the laws of Spain, and that its purpose was to give Spanish shipowners the same rights to contract freely as were possessed by foreigners in foreign ports. So holding, it follows that the decree below was right.

Decree affirmed, with interest and costs.