John ROGERS et al., Appellants,

v.

ALASKA STEAMSHIP COMPANY et al., Appellees.

No. 16862.

United States Court of Appeals Ninth Circuit.

Jan. 27, 1961.

Rehearing Denied April 4, 1961.

Rubin Tepper, McMurray, Walker & Tepper, Allan Brotsky, Richard A. Bancroft, San Francisco, Cal., for appellants.

James L. Adams, Gary J. Torre, Lillick, Geary Wheat, Adams & Charles, San Francisco, Cal., proctors for appellees, American Mail Lines, Pacific Far East Lines, Pacific-Atlantic Steamship Co., Pope & Talbot, Pacific Transport Lines, Inc., States Steamship Co. Pacific Argentine Brazil Line, Inc.

Alvin J. Rockwell, John M. Naff, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., proctors for appellees Matson Navigation Co., The Oceanic Steamship Co., and Oliver J. Olson & Co.

William R. Wallace, Jr., William R. Ray, Maynard Garrison, Wallace, Garrison, Norton & Ray, San Francisco, Cal., proctors for appellee, Grace Lines, Inc.

Peter N. Teige, George D. Wick, Jr., San Francisco, Cal., proctors for appellee American President Lines, Ltd.

Richard Ernst, San Francisco, Cal., Richard G. Logan, Oakland, Cal., proctors for appellees Coastwise Line, et al.

Before HAMLEY, JERTBERG and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

This is a suit in admiralty brought by and on behalf of seamen to recover additional wages and contributions to certain trust funds on the alternative theories of quantum meruit or unjust enrichment. The district court entered a final decree severing the claim of one of the libelants and dismissing the action as to all other libelants. The latter now appeal, raising questions concerning abuse of discretion in dismissing the second amended libel, the necessity of findings of fact and conclusions of law, the joinder of parties and causes, and the appropriateness of class suits in admiralty.

This case is an outgrowth of labor conditions which existed in the maritime industry on the west coast from June 19, 1952, through mid-October 1955. Immediately preceding June 19, 1952, the National Union of Marine Cooks and Stewards was recognized by the Pacific Maritime Association [1] as the exclusive bargaining representative of the unlicensed personnel serving in the various stewards departments of west coast vessels. For the forty-month period beginning June 19, 1952, however, these employees were hired and worked pursuant to the terms of a consent decree of this court. [2]

During this period the collective bargaining process was suspended. The purpose was to withhold collective bargaining until the National Labor Relations Board certified a union as the exclusive representative for collective bargaining purposes. Instead of operating through the earlier hiring hall arrange-

---

1. Pacific Maritime Association represented the steamship companies which are the respondents and appellees in this action.

2. The consent decree was entered in NLRB v. Pacific American Shipowners Ass'n, docket No. 13,386 in the files of this court. An unrelated matter dealt with by this court in that case is reported in 218 F.2d 913.

ment the stewards department employees presented themselves to a central registration office established and operated by the steamship companies. These employees were there registered and dispatched to jobs on the vessels of the various participating employers.

Libelants allege that the consent decree arrangement was taken advantage of by the employers to withhold wage increases and other benefits to which libelants claim they are entitled. This contention is predicated upon a comparison between the treatment accorded them during this interim period with that which they claim was accorded the personnel of other departments with which there had formerly been parity.

Seeking a remedy, John J. Rogers, Charles Mullen, W. A. Hopwood, Jr., and Herbert Patterson, suing on behalf of themselves and others, filed a libel in admiralty against thirty-three employer respondents. The libel, which was filed on February 8, 1956, was stated in four counts.

The purpose of the first two counts was to obtain a monetary recovery for the individual libelants and for each of 275 other seamen whom they purported to represent. Such recovery was to be measured by the difference between the wages and other benefits which each had received during the forty-month period and the reasonable value of their respective services during that period. It was libelants' theory that this difference is reflected in the percentage increases and benefits which were paid to the unlicensed deck and engine room personnel aboard the same vessels during the relevant period. The first count was grounded on an implied-in-fact quantum meruit theory; the second was alternatively based on an unjust enrichment, implied-in-law theory.

In the third and fourth counts the four named libelants sought to state a class action on behalf of themselves and some 4,000 seamen similarily situated. The purpose of these counts was to obtain recovery for the benefit of a stewards department health and welfare trust fund and a stewards department pension trust fund with respect to the contributions allegedly due and unpaid from the thirty-three respondent steamship companies. The third count was based on a quantum meruit theory; the fourth was alternatively based on an unjust enrichment theory.

Exceptions were filed by certain respondents alleging procedural and substantive defects in the libel described above. The district court dealt with these in an order filed on November 16, 1956.

As to counts one and two, the procedural exceptions were directed to an alleged misjoinder of the four named libelants, thirty-three respondents, and causes of action, and the asserted impropriety of the four named libelants representing other seamen. By this time the number of seamen whom the four libelants sought to represent in the first two counts had grown from 275 to about 400, and was ultimately to reach 650.

Concerning the misjoinder question, the district court referred in its opinion and order to rule 7(a), Local Admiralty Rules, United States District Court, Northern District of California, West's Ann.Code, where the libel was filed. It is provided therein that parties and causes of action may be joined "if the causes of action involve substantially the same questions and arise out of the same transaction."

The court held that in so far as the first two counts were concerned, each voyage was a separate transaction between a seaman and the ship owner. It was therefore concluded that the causes of action stated in those counts did not arise out of the same transaction; therefore joinder of the four named seamen, the thirty-three respondents, or the causes of action was precluded.

With regard to the question of whether the four named libelants could repre-

sent several hundred others, the court noted in its order of November 16, 1956, that the four had written authorizations from the 650. It was therefore held that the suit could be brought on behalf of the other seamen "if the named libelant and those from whom he has such written authority sailed on the same voyage or voyages together."

Based on these and other conclusions of law stated in the order of November 16, 1956, it was therein ordered that counts three and four of the libel be dismissed. As to counts one and two, it was ordered that the causes of action of each of the four named libelants be completely severed, and that directions be given as to how the parties and causes of action could be joined in an amended libel. The court also directed that a further order be prepared to evidence these rulings.

Motions for reconsideration and for consolidation of causes of action were thereafter made. On February 12, 1957, an order was entered denying these motions and confirming and formalizing the rulings contained in the opinion and order of November 16, 1956. Counts three and four were dismissed, and as to counts one and two it was ordered

"* * * that the exceptions of said respondents, with respect to Counts One and Two of the libel herein to the misjoinder of libelants, respondents and causes of action, be and the same hereby are sustained; that the libelants shall have sixty (60) days to file amended pleadings in which the causes of action of each of the four named libelants shall be completely severed, both as among themselves and as to each of the respondents against whom they have a claim, with the exception that any two or more of the four named libelants may join their claims against one respondent with respect to one or more voyages on which they served together and any one of the four named libelants may sue with respect to one or more voyages on behalf of himself. and those with whom said libelant sailed on the same voyage or voyages and whom said libelant has written authority to represent in this action, but not otherwise * * *."

Libelants appealed from the order of February 12, 1957. On March 1, 1957, while this appeal was pending, libelants filed and served interrogatories directed to each of the respondents.[3] Several of the respondents filed objections to these interrogatories, but no action was taken thereon during the pendency of the appeal. On October 29, 1957, the appeal was dismissed on the ground that the order of February 12, 1957, was not a final order. Rogers v. Alaska Steamship Co., 9 Cir., 249 F.2d 646.

There ensued a period of settlement negotiations which eventually proved fruitless. During this period orders were entered on five different occasions giving libelants additional time in which to file amended pleadings. The objections to the interrogatories were then brought on for hearing. The principal objection made by respondents was that the interrogatories were premature in-

---

3. The interrogatories were as follows:

"1. State whether, as to each libelant herein and each person named in Exhibit A to the libel herein, as supplemented through October 25, 1956 (some 600 seamen) such person was employed in the stewards department of any vessel owned, chartered, managed, operated, navigated or controlled by you during the period from June 19, 1952 through October 15, 1955.

"2. If, as to any such person, the answer to the preceding interrogatory is in the affirmative, state as to each such person

"(a) the name of the vessel on which employed,

"(b) the voyage number or numbers during which employed,

"(c) the period or periods during which employed for each voyage number or numbers, and

"(d) the job classification in the stewards department for which employed for each such voyage."

asmuch as there was then no libel on file in which any specific claim was asserted against any of the respondents.

Libelants resisted this objection by asserting that they were unable to file amended pleadings in accordance with the ·order of February 12, 1957, until they had the information sought by the interrogatories. They further asserted that the interrogatories afforded the only practical means of obtaining the information.

On February 5, 1959, the district court entered an order sustaining the objections to the interrogatories. In the same order libelants were given twenty days in which to file amended pleadings subject to modification upon a showing of good cause.

On March 19, 1959, John J. Rogers, one of the four original libelants, filed an amended libel solely on his own behalf and against respondent American President Lines, Ltd., only. Eighteen counts were stated, two each with respect to nine separate voyages of a steamship operated by that respondent. The amended libel filed by Rogers was thereby in effect severed from all other parties and causes of action involved in the original suit and thereafter proceeded on its separate way. It is sufficient to note that the second amended libel of Rogers was thereafter dismissed and an appeal from the order of dismissal is now pending in this court in docket No. 17,110.

On the same day that Rogers filed. his amended libel the 650 seamen whom the four original libelants had sought to represent in counts one and two of the original libel joined in a motion for leave to become parties libelant, or in the alternative to intervene as parties libelant in the initial proceeding. The alleged purpose in making this motion was to permit the Rogers libel to proceed as a "pilot" case to be heard on the merits.

The motion was denied, after hearing, on May 6, 1959.

In the order of denial libelants other than Rogers were given until September 1, 1959, to file amended pleadings "in conformity with the * * * orders of November 16, 1956, February 12, 1957, and February 5, 1959." It was provided that no modification of the previous orders was intended; the right to obtain a pretrial conference was preserved. The order expressly stated that it was without prejudice to any defenses which any respondent might have.

On July 17, 1959, the district court entered an order requiring the San Francisco office, Merchant Vessel Personnel Division, United States Coast Guard, to furnish certain information to the proctors for libelants.[4] On August 31, 1959, libelants, except Rogers, were granted a further extension of time to November 1, 1959, within which to file amended pleadings.

Libelants thereafter moved once more for an extension of time within which to file amended pleadings. After hearing, an order was entered on December 30, 1959, extending such time to January 15, 1960. Consistent with the order of May 6, 1959, it was provided in this order that the amended pleadings were to be "in strict conformity to and compliance with" the orders of November 16, 1956, February 12, 1957, and February 5, 1959, that no modification of those orders was intended, and that the extension of time was without prejudice to any defense any respondent might have. This extension order also expressly provided that no further extension would be granted and that if amended pleadings in strict conformity with prior orders were not filed by January 15, 1960, the suit would be subject to dismissal.

On January 14, 1960, a second amended libel in personam was filed. In this

---

4. The information to be furnished was of the same general character as that sought to be elicited by the interrogatories. See footnote 3. Such information was required as to each seaman from whom the proctors had written authorization.

pleading the 650 seamen whom the four original libelants had sought to represent in counts one and two of the original libel were themselves named as libelants, and of the original four libelants only Rogers was named as a party. Two of the original libelants, Mullen and Hopwood, were thereafter named as libelants in a supplement to the second amended libel filed on January 28, 1960.[5]

This amended pleading also named sixty-six respondents, only twenty-three of whom were named as respondents in the original libel. This amended pleading restates only the claims set out in the first and second counts of the original libel. It pertains to numerous voyages over a period of three years, specifically enumerated in schedules attached to the amended pleading.

The district court heard argument on exceptions filed against the amended pleading. As a result, that court on February 16, 1960, entered a final decree in admiralty severing the individual claims of Rogers, and dismissing the actions as to the remaining causes of action against all respondents. The reasons for the dismissal, as recited in this decree, are quoted in the margin.[6]

The four original libelants, in their own behalf and on behalf of the other 650 seamen, have appealed. They challenge the validity of the decree of February 16, 1960, and the previous orders

adverse to them, particularly the order of February 12, 1957. Concerning the decree of February 16, 1960, it is first argued that the district court abused its discretion in dismissing the second amended libel. Three reasons are advanced in support of this contention, the first being that the district court erred in its interpretation of the previous orders of the court.

As indicated by the recitals contained in the decree of February 16, 1960, quoted in part in footnote 6, the district court held that the second amended libel did not comply with the directions contained in previous orders of the court. This noncompliance, the district court indicated, resulted from the lateness of the amended pleading and from the fact that the amended pleading (1) did not tender any claims in the manner prescribed by previous orders, (2) named as libelants some 600 seamen whom the four original libelants had previously sought to represent, and (3) named as respondents many shipping companies not theretofore named.

In order to determine whether the district court thereby misinterpreted previous orders of the court, it is necessary to review the provisions of previous orders with regard to each of the three matters noted above. Concerning the first of these, the basic previous order to be considered is that of February 12, 1957. In that order, quoted in part at an earlier point in this opinion, directions

5. Mullen's claims, as listed in this supplement, related to nine voyages on vessels operated by three different respondents. Hopwood's claims related to ten voyages on one vessel operated by one respondent.

6. "The Second Amended Libel filed on January 14, 1960, does not tender any claims by the original four libelants either in their own behalf or in a representative capacity in behalf of other seamen in the manner prescribed by previous orders of this Court. For the first time, four years after the commencement of this action, the amended libel names as libelants some 600 seamen whom the four original libelants had previously sought to represent and names as re-

spondents many shipping companies not heretofore named.

"Thus the Second Amended Libel not only improperly joins causes of action arising out of unrelated contracts of employment, but also comes too late. All of the information required to present the claims of the 600 seamen as they are now presented has been available in the records of the Coast Guard since the commencement of this action. Since the order of this Court entered on November 16, 1956, the presently named libelants have been apprised of the limitations inherent in the presentation of their claims in a representative suit. Yet, they have delayed more than three years to file the amended libel in their own behalf."

were given as to how the original libelants would be permitted to tender claims in an amended pleading, "but not otherwise."

The order of February 12, 1957, contemplated that only the original four libelants could file amended pleadings. Only one of them, Rogers, was named in the second amended libel filed on January 14, 1960. As previously noted, however, he was then proceeding separately and asserted no claim in this amended libel. Two of the original libelants, Mullen and Hopwood, were named in a supplement to the second amended libel filed on January 28, 1960. This supplement, however, was filed thirteen days after the final deadline for the filing of amended pleadings, as set in the order of December 30, 1959. It was filed three days after respondents had filed a notice of motion and motion to strike and dismiss the second amended libel.

The order of February 12, 1957, also contemplated that the causes of action of each of the four named libelants should be completely severed, both as among themselves and as to each respondent, with exceptions to be discussed below. In the second amended libel, as supplemented, however, the causes of action of the two original libelants still in the case [7] were not completely severed, either as between themselves or as to individual respondents.

They were not completely severed as between themselves because the only two remaining original libelants, Mullen and Hopwood, were joined as libelants in the same amended libel. The fact that in this pleading it was requested that the claims of individual libelants be regarded as separate causes of action did not effectuate a complete severance as to such libelants. Such a severance could be accomplished only by filing separate amended libels.

The causes of action were not completely severed as to individual respond-ents because sixty-six respondents are named in the second amended libel. One of these was named in connection with libelant Hopwood's claims and three others were named with respect to libelant Mullen's claims.

Nor is the failure to completely sever the causes of action as to libelants and respondents excused under either of the exceptions provided for in the order of February 12, 1957. The first exception permits two or more of the original libelants to join their claims against any one respondent with respect to one or more voyages on which they served together. But in the second amended libel, as supplemented, Mullen and Hopwood do not assert any claims against the same respondent.

The second exception permits any of the four original libelants to sue with respect to one or more voyages on behalf of himself and those with whom the libelant sailed on the same voyage or voyages and from whom such libelant has written authority. But in the second amended libel, as supplemented, neither Mullen, Hopwood, nor any other named libelant purports to sue on behalf of any other seaman.

■ We conclude that in holding in its decree of February 16, 1960, that the second amended libel does not tender any claims in the manner prescribed by previous orders, the court did not misinterpret the previous orders of that court.

We reach the same conclusion with respect to the holding of the court that noncompliance with previous orders was manifested by the inclusion in the second amended libel of 650 libelants not previously named, and numerous respondents not previously named.

In its order of May 6, 1959, the district court had denied a motion made on behalf of these 650 seamen that they be granted leave to become parties libelant, or in the alternative to intervene as libelants. The attempt in the second amend-

7. This is on the assumption that Mullen and Hopwood were still in the case de-spite the tardy inclusion of their names in the second amended libel.

ed libel to add these 650 seamen as parties libelant was in complete disregard of this order of denial and constituted noncompliance therewith.

No order was ever sought or obtained granting leave to add as parties respondent any of the respondents whose names appear for the first time in the second amended libel. Absent such an order the inclusion of these new respondents constituted noncompliance with the order of February 12, 1957. It also constituted noncompliance with the order of December 30, 1959, which required that amended pleadings be in strict conformity to and compliance with the order of February 12, 1957, and other orders.

We therefore hold that in so far as the decree of February 16, 1960, represents the district court's interpretation of previous court orders that court did not err or abuse its discretion.

■ Appellants argue that the district court abused its discretion in holding in the decree of February 16, 1960, that the 650 seamen were "too late" in asserting their claims in the second amended libel. Under all the circumstances recounted above, we believe that this was an appropriate conclusion in so far as participation in the instant action is concerned. But whether it is or not, the noncompliance with previous orders, as discussed above, provided adequate ground for the decree of dismissal.

Appellants also contend that the district court abused its discretion in failing to provide in the decree of February 16, 1960, that the dismissal did not constitute an adjudication on the merits. The decree is final in form and it is appropriately so with regard to the four original libelants.

■ However, with regard to the 650 seamen named libelants in the second amended libel, the decree cannot be regarded as an adjudication on the merits, whether or not that was intended by the district court. As to them the second amended libel was properly dismissed because they had never been granted leave to join in the action and because the attempted joinder was counter to previous court orders. But since these 650 seamen were thus without standing in the action, the district court could not have adjudicated the merits of their claims by foreclosing future suits on the ground of staleness. If the claims of these seamen are stale that defense will have to be presented in any independent suits which they may see fit to institute.[8]

Aside from the question of abuse of discretion, appellants challenge the decree of February 16, 1960, on the ground that it should have been but was not supported by findings of fact and conclusions of law. In advancing this argument appellants rely upon Admiralty Rule 46½, 28 U.S.C.A.[9]

■ There were no facts to be found in connection with any matter which was before the court when the final decree of February 16, 1960, was entered. That decree involved no adjudication of fact but only questions of law. In civil proceedings no findings of fact would be required under these circumstances. Thomas v. Peyser, 73 App.D.C. 155, 118 F.2d 369, 374. We think the same rule applies by analogy in suits in admiralty.

---

8. Appellees do not seem to contend that the decree of February 16, 1960, constitutes an adjudication on the merits as to the 650 seamen. They argue only that "assuming the dismissal below has this effect" these seamen have not been prejudiced. This argument goes: "[I]f the attempt by appellants to present their claims in their own capacity in this action is too late, any effort by them to commence an entirely new action would *a fortiori* be too late." We express no view as to this.

9. Rule 46½:
"In deciding cases of admiralty and maritime jurisdiction the court of first instance shall find the facts specially and state separately its conclusions of law thereon; and its findings and conclusions shall be entered of record and, if an appeal is taken from the decree, shall be included by the clerk in the record which is certified to the appellate court under rule 49."

The decree of February 16, 1960, is also challenged as giving finality to previous orders contended to be erroneous in which exceptions to counts one and two of the original libel were sustained and counts three and four were dismissed. As previously noted, an earlier attempt to reverse these other orders was rejected by this court as premature. The prior order to which attention is principally directed is that of February 12, 1957, described above. Appellants question the trial court's rulings evidenced by that order, that the original libel involves a misjoinder of parties and causes of action and an impermissible attempt to state a class action.

■ The fact which is controlling here is that the parties did not choose to let that order go to final judgment. Instead, they elected to amend. Having done so, the second amended libel was substituted in all respects for the original, and complaint may not now be made of the order which required the amendment. Studio Carpenters Local Union No. 946 v. Loew's, Inc., 9 Cir., 182 F.2d 168, 170.

The directions relative to the form of amended pleadings contained in the order of February 12, 1957, authorized joinder of libelants to the extent they were employed on the same voyage. Had amended libels consistent with these directions been filed, it is likely that the number of suits would have been further reduced by orders of consolidation. This would have been possible to the extent that similarity of claims and defenses permitted consolidations under Local Admiralty Rule No. 14.[10] Had this course been followed, the number and size of the lawsuits growing out of this controversy could have been held within reasonable bounds.

The decree of February 16, 1960, and all previous orders which were thereby made final are

Affirmed.

## On Petition for Rehearing

**PER CURIAM.**

An opinion affirming was filed herein on January 27, 1961. Appellants have petitioned for rehearing, contending among other things that we should have dealt on the merits with the class action aspect of this case. As we stated in the opinion of January 27, 1961, class actions were pleaded in the third and fourth counts of the original libel. These counts were dismissed by orders of November 16, 1956, and February 12, 1957. Appellants argued that this was error.

We did not deal on the merits with the initial dismissal of any of the four counts of the libel, holding that libelants did not stand thereon but elected to amend. With regard to counts three and four, in which class actions were sought to be stated, a further explanation is appropriate.

The claims stated in these counts sought recovery for the benefit of a stewards' department health and welfare trust fund and a stewards' department pension trust fund. These are common funds of which stewards' department employees and their families are the sole beneficiaries. The relief sought under counts three and four was to require appellees to contribute to those trust funds a percentage of the additional wages to which members of the class would be entitled under the theory advanced in support of the individual wage claims asserted in the first and second counts of the libel.

The basic premise of the class counts, therefore, is that the four original libelants and the 4,000 additional seamen they

10. Rule 14 reads:
"When various suits are pending, all resting upon the same matter of right or defense, even though there is no common interest between the parties, the Court may order the suits to be tried together, and may order a single decree or decrees in each cause."

sought to represent were entitled to additional wages on the theory advanced in counts one and two of the libel. There is no contention that appellees have failed to add to the trust funds the required percentage of such wages as they concede were earned. The quarrel is not over failure to comply with the trust arrangements, but over the question of what wages were earned by individual members of the class. Thus the issue presented is precisely the same under the class counts as under counts one and two, i. e., the alleged right to additional wages.

But except for John Rogers, one of the original libelants whose claim has now been severed from this proceeding, none of the original libelants or the 4,000 other seamen they seek to represent has present standing to establish a claim for such additional wages. The three remaining libelants (other than Rogers) and the 650 seamen they sought to represent in counts one and two do not have such standing because they elected to amend their libel with regard to their claims for wages and did so in a manner which was ineffective. The remainder of the 4,000 seamen sought to be represented in the class counts have never had such standing, since the class counts did not purport to assert wage claims.

■ Since members of the class have either not asserted wage claims or have not done so effectively, the underlying premise upon which the class counts are based cannot be established. It would be a curious anomaly if these 4,000 seamen, while unable to establish through a class action or otherwise their right to additional wages, could nevertheless require appellees to contribute a percentage of such wages to the trust funds in question.

For this reason, if for no other, the district court's order dismissing the class counts must, under the present posture of the case, be sustained.

The petition for rehearing is denied