**WALL STREET TRADERS, INC.,**
Libelant,

v.

**SOCIEDAD ESPANOLA de CONSTRUCCION NAVAL, Respondent.**

United States District Court
S. D. New York.
Nov. 9, 1964.

See also D.C., 236 F.Supp. 358.

Zock, Petrie, Sheneman & Reid, New York City, for libelant; Francis J. O'Brien, Philip J. Curtin, George D. Byrnes, New York City, of counsel.

Sol A. Rosenblatt, New York City, for respondent, appearing specially; Charles Roden, Kirlin, Campbell & Keating, James J. Higgins, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge:

This is a suit in admiralty arising out of a contract for the alteration of the S. S. Glenbrook, a T–2 tanker, to a dry bulk carrier in Spanish yards.

Libelant, Wall Street Traders, Inc. (Traders) is a New York corporation with its principal offices and place of business here. Respondent Sociedad Espanola de Construccion Naval (Naval) is a Spanish corporation with no place of business in the United States and concededly not doing business here. Jurisdiction was obtained by writ of foreign attachment on substantial funds of Naval on deposit with a New York bank.

The contract for the alteration of the Glenbrook was originally made between Progressive Steamship Co. (Progressive) also a New York corporation with its principal office here and Naval. The contract was made in Spain and was to be performed there. Traders, the owner of the Glenbrook, apparently had previously entered into an agreement with Progressive by which Progressive undertook such alterations. Progressive in turn contracted with Naval to carry out the alterations and delivered the Glenbrook to Naval's Spanish yards. The alterations have not been completed and the vessel remains in Naval's hands in its yards.

We are concerned here with Traders' second amended libel against which Naval now moves. A first amended libel was

dismissed by Judge Tyler with limited leave to amend.

The first amended libel set forth a single claim by Traders for breach of the contract between Progressive and Naval and sought to allege a novation between Traders, Naval and Progressive as the basis for Traders' right to sue upon that contract. After service of the first amended libel Traders moved before Judge Tyler for an order compelling arbitration under an arbitration clause in the contract. Naval cross-moved for an order dismissing the libel, vacating the attachment and granting alternative relief.

In his memorandum of September 10, 1963 D.C., 236 F.Supp. 358, Judge Tyler determined that "the law of Spain covers this contract. Accordingly the law of Spain determines whether there was a novation under this contract, by virtue of which Traders became a contracting party." He held that the amended libel failed to state a claim on which relief could be granted since it did not plead Spanish law as to novation upon which Traders' right to sue as a contracting party depended. He therefore dismissed the amended libel "with leave to libelant to serve a second amended libel containing proper allegations of applicable Spanish law." He also denied Traders' motion to compel arbitration and Naval's motion to vacate the underlying attachment and for other relief without prejudice to renewal.

The second amended libel purportedly served pursuant to the leave granted by Judge Tyler contains not only the claim for breach of contract pleaded in the first amended libel with additional allegations of Spanish law, but a second claim for damages for alleged failure to maintain and care for the vessel and for the conversion of the vessel by the respondent to its own use.

Naval's present motion is (1) to dismiss the second amended libel pursuant to Rule 12(b), F.R.Civ.P., for failure to state a claim upon which relief can be granted; (2) for summary judgment pursuant to Rule 58(b) of the Supreme Court Admiralty Rules; (3) to dismiss for lack of admiralty jurisdiction; (4) in the alternative to have the court decline jurisdiction on the grounds of forum non conveniens; and (5) to vacate the attachment pursuant to Rule 21 of the Admiralty Rules of this court. It also claims that Traders has lost the right to maintain this suit because Progressive has appointed an arbitrator in London under the arbitration clause in the contract.

The central issue on the motions to dismiss and for summary judgment revolves about the question of whether or not there was a novation under applicable Spanish law. Both parties have submitted extensive affidavits dealing both with the facts as to the alleged novation and with Spanish law on that and other subjects.

### 1. *The sufficiency of the second amended libel.*

(a) The first count pleaded.

This is in substance the same claim as was pleaded in the first amended libel with allegations of Spanish law added. It sounds in breach of the Progressive-Naval contract and Traders bases its right to sue upon an alleged novation.

The allegations as to novation are as follows:

"SEVENTH: On or about January 28, 1963 libelant, with the express consent of the respondent, was substituted for, and succeeded to all of the rights, privileges and power of, Progressive Steamship Corporation under the aforesaid contract dated August 2, 1961, and addenda thereto between said Progressive Steamship Corporation and respondent."

It is then alleged that Traders performed all the terms and conditions of the contract on its part. Allegations as to the Spanish law of novation follow to the effect that parties to a contract may agree to the substitution of a new obligor with the consent of the obligee and there are specific references to what are claim-

ed to be the pertinent sections of the Spanish Civil Code.

Naval contends that the first count must be dismissed because Traders has failed to allege the essential ingredients of a novation under Spanish law as it is pleaded. Naval goes upon the theory that the absence of an express allegation that Traders assumed all the obligations of the contract is fatal.

In my view the allegations with respect to the novation, while they might have been more artistically pleaded, are not insufficient as a matter of law. The allegation that Traders "with the express consent" of Naval "was substituted for" Progressive under the contract and succeeded to all of Progressive's rights, privileges and power thereunder, gives rise to a fair inference that Traders assumed whatever obligations Progressive may have had under the contract. This is fortified by the allegation that Traders has performed all of the conditions of the contract on its part.

These allegations are quite consistent with the Spanish law on novation as it is pleaded in the libel. Under the law as pleaded there is no requirement that consent to a novation be given in writing. It is specifically alleged that Naval's consent was "express," plainly a sufficient compliance with the requirement as to consent.

Naval's claim that the Spanish law is different from that pleaded in the libel and requires consent in writing does not affect the motion to dismiss since the allegations of the libel must be taken as true on such a motion. See Castillo v. Argonaut Trading Agency, Inc., 156 F. Supp. 398, 400 (S.D.N.Y.1957).

Under the present liberal and non-technical rules of pleading a party is not required to spell out every legal consequence which might flow from a state of facts. See Steadt v. United States, 157 F.Supp. 523, 525 (S.D.N.Y.1957). It is enough that the opposing party be given fair notice of the nature and theory of the claim on which the pleader relies. That has been done in the first count

pleaded in the second amended libel and the motion to dismiss that count will be denied.

(b) The second count pleaded.

The second count for failure to care for and maintain the vessel and for its conversion is on quite a different footing. The only claim pleaded in the first amended libel which was before Judge Tyler was one for breach of contract. Judge Tyler's leave to amend after dismissal of the first amended libel was solely for the purpose of permitting Traders to replead its breach of contract claim so as to include necessary allegations of controlling Spanish law relative to novations. No leave was granted to include an additional and quite different count. Thus, pleading the conversion count included in the second amended libel was contrary to Judge Tyler's order and on this ground alone that count should be dismissed. See Rogers v. Alaska Steamship Co., 290 F.2d 116 (9 Cir.), cert. den., 368 U.S. 901, 82 S.Ct. 279, 7 L.Ed.2d 95 (1961).

Moreover, Traders concedes that the allegations of Spanish law pleaded in the second count are wholly insufficient, as they plainly are, and that Naval's motion to dismiss is well taken. Traders now belatedly requests leave to amend yet another time to include additional allegations of Spanish law. This request to amend, addressed to the discretion of the court, see, e. g., Clinton v. Joshua Hendy Corp., 277 F.2d 450 (9 Cir.) (per curiam), appeal dismissed, 364 U.S. 292, 81 S.Ct. 77, 5 L.Ed.2d 39 (1960); Walsh v. United States, 63 F.Supp. 114 (S.D.N.Y. 1945); The Corozal, 19 F. 655 (E.D.La. 1884), is denied.

Traders has already amended its original libel twice and now seeks to do so a third time, in a case where very substantial funds of Naval have been tied up under attachment pending the determination of the suit. In fairness to Naval, Traders should not be permitted to re-introduce into the litigation by unauthorized amendment a claim which it has already dropped from its original

libel and thus prolong the litigation to Naval's substantial prejudice.

In the light of all the circumstances here the second count stated is dismissed and leave to amend further is denied in the exercise of discretion.[1]

In determining Naval's motion to dismiss laid under Rule 12(b), F.R.Civ.P., the motion to dismiss the first count will be denied and the motion to dismiss the second count will be granted. The motion, insofar as necessary, is considered as an exception to the sufficiency of the second amended libel under Rule 27 of the Supreme Court Admiralty Rules. As so treated the exceptions to the sufficiency of the first count are overruled and to the sufficiency of the second count are sustained.

2. *The motion for summary judgment.*

Naval contends that the affidavits submitted on this motion demonstrate conclusively that there was no novation under Spanish law. Naval therefore asserts it has been established that Traders has no right to sue on the Progressive contract and that it is entitled to summary judgment in its favor.

Naval's theory is that under Spanish law there may not be a novation unless the obligee under the contract has given express approval in writing. Naval says that its affidavits establish that this is the Spanish law and also that there was no written consent here. Therefore, it contends, there could not have been a novation.

Naval is not entitled to summary judgment since there are issues of fact which require a trial both with respect to what the Spanish law is and with respect to whether there was a novation here.

Both sides have submitted affidavits of members of the Spanish bar giving their respective versions of Spanish law applicable to novations. These versions are in sharp conflict on the question of whether express consent in writing of the obligee is required in order to effect a novation.

Even assuming the doubtful proposition that the court under appropriate circumstances *may* take judicial notice of foreign law, see Black Diamond S. S. Corp. v. Robert Stewart & Sons, Ltd., 336 U.S. 386, 396–397, 69 S.Ct. 622, 93 L.Ed. 754 (1949), José Taya's Sons Co. v. Brassler, 280 F. 825 (2 Cir. 1922),) this is not an appropriate case for the court to do so. As Judge Tyler pointed out here "the issues of law are substantial and complex." The question of what the Spanish law is is a question of fact. See Fernandez v. Linea Aeropostal Venezolana, 156 F.Supp. 94, 98 (S.D.N.Y.1957). Whether or not Traders can establish a novation may be in substantial measure dependent upon a determination of that question. That question should not be resolved on conflicting affidavits but on a trial where the court will have an opportunity to hear the testimony of experts on the subject and will have the benefit of cross-examination. This issue requiring trial precludes summary judgment.

In addition, there is the question of whether under the circumstances here there was in fact a novation. That question requires consideration, among other things, of the extensive course of dealings between the parties, the writings exchanged between them, prior knowledge by Naval of Traders' ownership of the Glenbrook and similar matters. It cannot be resolved on the conflicting affidavits presently before me and also presents triable issues of fact. See Seawind Compania S. A. v. Crescent Line, Inc., 211 F.Supp. 157, 160 (S.D.N.Y. 1962).

The motion for summary judgment is therefore denied.

---

1. This holding makes it unnecessary to pass upon Naval's contention, which may have some merit, that a claim for conversion based on the facts pleaded is not a maritime claim within the admiralty jurisdiction of this court and its further contention that in any event Traders has not alleged in this count a sufficient relationship with Naval to entitle it to recover on such a claim under Spanish law.

### 3. *Admiralty jurisdiction.*

Naval argues that this court lacks admiralty jurisdiction because the contract in suit is not considered a maritime contract in Spain, nor is a suit on such a contract considered a maritime cause of action there. Even assuming the doubtful proposition that, on the papers before the court, this is the applicable law of Spain, the argument is without merit and does not warrant extensive discussion.

28 U.S.C. § 1333 grants district courts jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction." In determining whether a cause of action is to be characterized as maritime, the court must choose between (1) the law of the forum—Federal admiralty law, or (2) the law of the place of the transaction—Spanish law. See In re Keller's Petition, 149 F.Supp. 513, 517 (D.Minn.1956); cf. Loucks v. Standard Oil Co. of New York, 224 N.Y. 99, 120 N.E. 198 (1918). If the law of the place of the transaction is applied, the jurisdiction of a federal admiralty court would be dependent upon the peculiarities of particular foreign law and jurisdiction would vary from nation to nation. Such an interpretation of this court's admiralty jurisdiction would be contrary to the principal purpose behind the creation of federal admiralty jurisdiction—the establishment of a "general system of maritime law * * * with uniform operation." Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934); see Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 158–159, 40 S.Ct. 438, 64 L.Ed. 834 (1920); J. B. Effenson Co. v. Three Bays Corp., 238 F.2d 611, 615 (5 Cir. 1956); Frame v. City of New York, 34 F.Supp. 194, 196 (S.D.N.Y.1940).

 Moreover, as a practical matter, the manner in which a right may be enforced is necessarily dependent upon the judicial machinery of the forum and its mode of operation. Leflar, Conflict of Laws, § 60 (Student ed. 1959); see Levinson v. Deupree, 345 U.S. 648, 651–652, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); cf. Bournias v. Atlantic Maritime Co.,

220 F.2d 152, 154 (2 Cir. 1955); The Kongsli, 252 F. 267 (D.Maine) (1918). Thus in determining whether a court is open to a suitor, "the law of the court's creation" must be applied. Tennessee Coal, Iron & R. R. Co. v. George, 233 U.S. 354, 360, 34 S.Ct. 587, 589, 58 L.Ed. 997 (1914); see In re Keller's Petition, supra; cf. Atchison, T. & S. F. Ry. v. Sowers, 213 U.S. 55, 70, 29 S.Ct. 397, 53 L.Ed. 695 (1909); Leflar, supra, § 61 fn. 6.

 Under federal admiralty law, it is well settled that a contract to alter or convert a vessel is a maritime contract. New Bedford Drydock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922). See American Shipbuilding & Dock Corp. v. John Rourke & Sons, 4 F.2d 845 (5 Cir.), cert. den., 268 U.S. 702, 45 S.Ct. 638, 69 L.Ed. 1166 (1925); McDonald v. United States, 79 F.Supp. 953 (E.D.N.Y.1948). See also, Martran S. S. Co. v. Aegean Tankers Ltd., 170 F.Supp. 477 (S.D.N.Y.1959). Compare International Refugee Organization v. The San Francisco, 179 F.2d 284 (4 Cir. 1950). Therefore, the contract in suit here is plainly a maritime contract and our admiralty court has jurisdiction over it.

 Assuming that Spain chooses to afford a different forum with different procedures to enforce such a contract under its law, that does not oust the forum provided by our law for such enforcement. Our admiralty forum determines its own jurisdictional requirements and is available to suitors who come within such requirements.

Naval's application to dismiss for want of admiralty jurisdiction is denied.

### 4. *Forum non conveniens.*

As an alternative to the other relief sought, Naval seeks to have this court decline to entertain the suit on the grounds of forum non conveniens.

 In support of this application Naval points out that the contract in suit was made in and was to be performed in Spain; that the Glenbrook was delivered

to its yards in Spain; that the work was performed there, and that Spanish law governs. It claims that it will be not only inconvenient but prejudicial if the suit is heard and determined here.

However, Traders is a New York corporation with its principal place of business here and does not do business in Spain. Progressive is in the same posture. Plainly, witnesses from both Traders and Progressive will be required on the trial, all of whom are in this country. The Glenbrook is an American flag vessel registered from the Port of New York. The specifications for her alteration were drawn to conform to American standards and testimony from this side of the water is necessary on this question.

Moreover, Traders has obtained security in excess of $400,000 here by virtue of the attachment of Naval's bank deposits in New York. Naval has given no assurances that similar security will be available were Traders relegated to suit in Spain. See Swift & Co. Packers v. Compania Colombiana del Caribe, S. A., 339 U.S. 684, 697–698, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

In addition, though the contract between Naval and Progressive provides for arbitration in London and on some technical matters in Spain, Naval at one point indicated its willingness to submit to arbitration in New York. While it has since withdrawn that offer the fact that the offer was made tends to minimize the claim of prejudice to Naval if the case was tried here.

Finally, an allegation that the president of Traders was threatened with arrest if he went to Spain is undenied and there is at least some doubt as to the effectiveness of Traders' remedies in that jurisdiction.

Under the circumstances here, an American corporation should not be deprived of its right to pursue its remedies before the courts of its own country in the district of its own domicile in a case which is not without connections with this country. See Swift & Co. Packers v. Compania Colombiana del Caribe, S. A.,

supra, 339 U.S. at 697, 70 S.Ct. 861; The Saudades, 67 F.Supp. 820, 821 (E.D.Pa. 1946). Traders should not be relegated to the uncertain remedies of a foreign jurisdiction with all of the consequent inconvenience and disadvantage. See Chemical Carriers, Inc. v. L. Smit & Co. Internationale Sleepdienst, 154 F.Supp. 886 (S.D.N.Y.1957).

Naval has failed to establish that this court in the exercise of its discretion should decline jurisdiction on the ground of forum non conveniens and its application for this relief is denied.

### 5. *Application for other relief.*

A. Naval's application to vacate the writ of foreign attachment pursuant to Rule 21 of the Admiralty Rules of this Court must be denied in view of my rulings denying its application to dismiss on various grounds.

Naval has not shown that the writ or the levy thereunder were in any way defective. The amendments to the libel which have been allowed do not change the nature of the claim alleged and do not in themselves operate to discharge the attachment as can be inferred from Judge Tyler's previous decision. The contention that requirements of constitutional due process have been violated is wholly without substance.

B. Finally, Naval makes the curious contention that the appointment of an arbitrator in London by Progressive is an abandonment by Traders of its rights in this forum.

Apparently Naval demanded arbitration against Progressive in London subsequent to the commencement of this suit and appointed an arbitrator to act on its behalf in that proceeding. Progressive, to avoid default, then appointed its own arbitrator to act on its behalf to protect its interests as they might appear.

Progressive is not a party to the present suit. In addition, through a novation, Wall Street Traders claims to have been substituted for Progressive as a party to the Progressive-Naval contract. How an appointment of an arbitrator by

Progressive under these circumstances could affect Traders' right to sue is quite beyond me.

Settle order on notice embodying the rulings made in this opinion.